## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.: 1:17cv20640

THE FERRARO LAW FIRM, P.A.,
  a Florida professional association,

          Plaintiff,

vs.

TIMOTHY D. SCRANTOM, ESQ.,
SCRANTOM DULLES INTERNATIONAL,
  PLLC, a South Carolina professional limited
  liability company,
TEN STATE INTERNATIONAL LAW, PLLC, a
  South Carolina professional limited liability
  company, and
KENNETH PLATT ELDER,

          Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL
### AND FOR DECLARATORY JUDGMENT

Plaintiff, THE FERRARO LAW FIRM, P.A., a Florida professional association, sues the

Defendants, TIMOTHY D. SCRANTOM, ESQ., SCRANTOM DULLES INTERNATIONAL,

PLLC, a South Carolina professional limited liability company, TEN STATE INTERNATIONAL

LAW, PLLC, a South Carolina professional limited liability company, and KENNETH PLATT

ELDER, for damages and states as follows:

### INTRODUCTION

1.      This a negligence action for tortious interference with a business relationship

pursuant to this Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.

2.      This is also a declaratory-judgment action brought under the Declaratory Judgment

Act.  *See* 28 U.S.C. § 2201.

## PARTIES

3.      The Plaintiff, THE FERRARO LAW FIRM, P.A., at all times material, was and is a Florida professional association, organized and existing under the laws of the State of Florida, with its principal place of business located at 600 Brickell Avenue, 38th Floor, Miami, Florida.

4.      Defendant, TIMOTHY D. SCRANTOM, ESQ. (hereinafter referred to as "SCRANTOM"), at all times material, is a natural person of full age of majority who is domiciled and residing in Mt. Pleasant, South Carolina, and is otherwise *sui juris*.

5.      At all times material, Defendant SCRANTOM was and is a lawyer licensed to practice in the State of South Carolina.

6.      Upon information and belief, and at all times material, Defendant SCRANTOM is neither licensed nor authorized to engage in the practice of law in Florida.

7.      Upon information and belief, and at all times material, Defendant SCRANTOM engaged in the unlicensed practice of law by appearing as lead counsel for Defendant KENNETH PLATT ELDER, a non-Florida resident client, in an arbitration proceeding pending in Miami, Miami-Dade County, Florida, in violation of Rules 1-3.11 and 4-5.5 of the Rules Regulating The Florida Bar.

8.      SCRANTOM DULLES INTERNATIONAL, PLLC (hereinafter referred to as "SCRANTOM DULLES"), at all times material, was and is a professional limited liability company organized and existing under the laws of the District of Columbia, with its principal place of business located at 90 East Bay Street, Charleston, South Carolina.

9.      At all times material, Defendant SCRANTOM DULLES held itself out as a law firm specializing in offshore and international disputes, and litigation finance.

10.     Upon information and belief, and at all times material, Defendant SCRANTOM DULLES was not authorized to conduct business and/or to render legal services in Florida, including, but not limited to, representing non-Florida resident clients in arbitration proceedings in Florida.

11.     Upon information and belief, and at all times material, Defendant SCRANTOM is an officer, employee and/or agent of Defendant SCRANTOM DULLES.

12.     At all times material to this cause of action, Defendant SCRANTOM DULLES acted by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, who at all times conducted themselves within the course and scope of their employment and/or agency relationships while engaging in the tortious acts and/or conduct described hereinafter.

13.     TEN STATE INTERNATIONAL LAW, PLLC (hereinafter referred to as "TEN STATE INTERNATIONAL LAW"), at all times material, was and is a professional limited liability company organized and existing under the laws of the District of Columbia, with its principal place of business located at 200 Bank Street, Mt. Pleasant, South Carolina.

14.     At all times material, Defendant TEN STATE INTERNATIONAL LAW held itself out as a law firm specializing in offshore and international disputes, and litigation finance.

15.     Upon information and belief, and at all times material, Defendant TEN STATE INTERNATIONAL LAW was not authorized to conduct business and/or to render legal services in Florida, including, but not limited to, representing non-Florida resident clients in arbitration in Florida.

16.     Upon information and belief, and at all times material, Defendant SCRANTOM is an officer, employee and/or agent of Defendant TEN STATE INTERNATIONAL LAW.

17.     At all times material to this cause of action, Defendant TEN STATE INTERNATIONAL LAW acted by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, who at all times conducted themselves within the course and scope of their employment and/or agency relationships while engaging in the tortious acts and/or conduct described hereinafter.

18.     Defendant, KENNETH PLATT ELDER (hereinafter referred to as "ELDER"), at all times material, is a natural person of full age of majority who is domiciled and residing in Bloomfield Hills, Michigan, and is otherwise *sui juris*.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and any attorney fees, and (2) the named Plaintiff and Defendants are citizens of different states.  28 U.S.C. § 1332(a)(1).

20.     Venue is proper in the Miami Division of the United States District for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to this Complaint occurred in Miami, Miami-Dade County, Florida, and the Plaintiff, THE FERRARO LAW FIRM, P.A.'s, principal place of business is located in Miami, Miami-Dade County, Florida.

## CHOICE OF LAW

21.     Florida law governs the state law claims asserted herein by THE FERRARO LAW FIRM, P.A. against the Defendants.

22.     The Defendants' acts and omissions described herein were implemented in the State of Florida.

23.     Florida has a substantial interest in protecting the rights and interests of Florida residents against wrongdoing by individuals and companies that commit tortious acts within the State of Florida, which interest is greater than that of any other State or country.

## GENERAL ALLEGATIONS

24.     THE FERRARO LAW FIRM, P.A. is a professional association that represents clients in complex litigation matters, including, but not limited to, tax whistleblower claims for violations of the Internal Revenue Laws pursuant to 26 U.S.C. § 7623 and *Qui Tam* whistleblower claims under the Federal False Claims Act and the False Claims Acts of certain states.

25.     THE FERRARO LAW FIRM, P.A. has two shareholders: James L. Ferraro, Esq. and David A. Jagolinzer, Esq.

26.     On or about July 2008, Defendant ELDER contacted THE FERRARO LAW FIRM, P.A. to represent him in a tax whistleblower claim in order to assist the Internal Revenue Service (hereinafter referred to as "IRS") in the collection of outstanding federal tax obligations due by taxpayers from unclaimed fund accounts.

27.     Thereafter, on July 28, 2008, Defendant ELDER entered into a Contract of Representation (hereinafter referred to as the "Tax Whistleblower Contract") with THE FERRARO LAW FIRM, P.A. relating to his IRS tax whistleblower claim. *See* Tax Whistleblower Contract dated July 28, 2008 (**Exhibit A**).

28.     The Tax Whistleblower Contract was in writing and signed by Defendant ELDER in his individual capacity.  The scope of representation of the Tax Whistleblower Contract is clearly and unambiguously set forth in Paragraph 1, as follows:

1.     SCOPE OF REPRESENTATION

> *Attorney agrees to investigate, evaluate and pursue my possible tax whistleblower claim(s) for violations of the Internal Revenue laws, pursuant to 26 U.S.C.A. §7623, or other authority.*
>
> *After the investigation of my claim(s), Attorney shall have the right to withdraw and cancel this Contract if it is unable or unwilling to undertake the contemplated representation.   Thereafter, if Attorney agrees to pursue this claim after investigation and evaluation, I employee and retain attorney to represent my interests in the investigation, preparation and submission of materials required by the Internal Revenue Service ("IRS") or other administrative agency, and any and all other actions related to the claims(s) referenced above.*

*Id.* at Page 1.

29.     At all times material, Scott A. Knott, Esq. and Gregory S. Lynam, Esq., were non-equity partners and employees of THE FERRARO LAW FIRM, P.A.

30.     Scott A. Knott, Esq. and Gregory S. Lynam, Esq. worked on matters relating to the representation of Defendant ELDER in his IRS tax whistleblower claim under the Tax Whistleblower Contract.

31.     On September 20, 2011, the IRS rejected Defendant ELDER's IRS tax whistleblower claim No.: 2009-003676.

32.     On or about July, 2012, THE FERRARO LAW FIRM, P.A.'s representation of Defendant ELDER ceased under the Tax Whistleblower Contract after ELDER decided to abandon a resubmission of his previously rejected claim.

33.     From time to time through 2014, THE FERRARO LAW FIRM, P.A. examined other potential tax whistleblower submissions to the IRS proposed by Defendant ELDER for possible representation.

34.     None of these proposed potential tax whistleblower submissions were accepted by THE FERRARO LAW FIRM, P.A. and ever filed with the IRS on behalf of Defendant ELDER.

35.     At no time did THE FERRARO LAW FIRM, P.A. ever represent Defendant ELDER in any legal matter, of any nature whatsoever, other than his IRS tax whistleblower claim pursuant to the Tax Whistleblower Contract dated July 28, 2008, which was ultimately rejected by the IRS on September 20, 2011.

36.     On or about September 1, 2009, Total Asset Recovery Services LLC (hereinafter referred to as "TARS"), was formed as a Michigan limited liability company.

37.     The Members of TARS are: Gregory S. Lynam, Scott A. Knott, Thomas S. Prescott, Steven J. Lynam and RZE-Holdings, LLC.

38.     THE FERRARO LAW FIRM, P.A., James L. Ferraro, Esq. and David A. Jagolinzer, Esq. are not and have never been Members of TARS.

39.     THE FERRARO LAW FIRM, P.A., James L. Ferraro, Esq. and David A. Jagolinzer, Esq., have no other ownership interest in or control of TARS and/or of any of its business dealings.

40.     On or about On August 24, 2009, G3 Analytics LLC was created as a Michigan limited liability company.

41.     Upon information and belief, Defendant ELDER is the President and Sole Member of G3 Analytics LLC.

42.     G3 Analytics LLC was not a signatory to the Tax Whistleblower Contract.

43.     On or about September 2009, TARS and G3 Analytics LLC entered into a business relationship and began to work together on a "Treasury Bond Project" designed to find and recover unclaimed savings bonds for owners.  The Treasury Bond Project was ultimately unsuccessful.

44.     Almost one (1) year later, on or about August 2010, Defendant ELDER proposed a new business project he code-named the Q1 Project (hereinafter referred to as "Q1 Project") to Gregory S. Lynam, in his capacity as a Member of TARS.

45.     The Q1 Project was designed in part to help state governments identify life insurance companies that failed to escheat abandoned death benefits to the state when the beneficiary of the death benefit could not be located within a statutorily prescribed period of time.

46.     The Q1 Project includes *Qui Tam* life insurance whistleblower claims, but it does not include tax whistleblower claims alleging violations of the Internal Revenue laws.

47.     Upon information and belief, Defendant ELDER specifically requested that his name and/or involvement in the Q1 project remain anonymous because he had other unrelated ongoing business relationships with some of the same life insurance companies that would be the subject of any potential *Qui Tam* life insurance whistleblower claims. In exchange for and in consideration for his anonymity, Defendant ELDER agreed to serve only as a consultant to TARS and further agreed that TARS would pursue the Q1 Project related *Qui Tam* life insurance whistleblower claims as the named relator.

48.     Accordingly, on August 20, 2010, Defendant ELDER, by and through G3 Analytics LLC, for good and valuable consideration, entered into a Consulting Agreement with TARS (hereinafter referred to as "the Consulting Agreement") for the purpose of pursuing the Q1 Project. *See* Consulting Agreement dated August 20, 2010 (**Exhibit B**).

49.     The Consulting Agreement was in writing.

50.     The Consulting Agreement was signed by Defendant ELDER in his capacity as President and Sole Member of G3 Analytics LLC.

51.     Steven Lynam signed the Consulting Agreement in his capacity as the President of TARS.

52.     Defendant ELDER had a Michigan lawyer, John Isgrigg Esq., who was not affiliated with THE FERRARO LAW FIRM, P.A., independently review the Consulting Agreement before Defendant ELDER signed it on behalf of G3 Analytics LLC.  *See* e-mail exchange dated August 12, 2010 – August 19, 2010 (**Exhibit C**).

53.     John Isgrigg Esq. suggested edits to the Consulting Agreement before Defendant ELDER signed it. *See id.*  The proposed edits and/or revisions were incorporated into the final version of the Consulting Agreement. *Id.*

54.     Upon information and belief, in addition to Attorney John Isgrigg, Defendant ELDER had eight attorneys other than THE FERRARO LAW FIRM, P.A. representing him at the time G3 Analytics entered into the Consulting Agreement with TARS.

55.     The Recitals set forth in the Consulting Agreement state as follows:

> *WHEREAS, the Company [TARS] is in need of assistance in obtaining information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits; and*
>
> ***WHEREAS, Consultant [G3 Analytics LLC] has agreed to perform consulting work for the Company [TARS] in providing information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits, support and other related activities as directed by the Company [TARS].***

S*ee* **Exhibit B** at Page 1. (emphasis added).

56.     Paragraph 2 of the Consulting Agreement provides that, as consideration for the consulting services to be performed by G3 Analytics LLC under the Consulting Agreement, TARS agreed to pay G3 Analytics LLC a contingent fee at the rate of seventy-five percent (75%) of the

net proceeds from any "insurance-oriented Qui Tam lawsuit filed by or on behalf of the Company [TARS]." S*ee id.*

57.     Paragraph 6 of the Consulting Agreement provides that any notice or communication permitted or required by this Agreement shall be deemed effective when delivered to "G3 Analytics Care of Attorney John Isgrigg."  *Id.* at Page 2.

58.     Paragraph 7.1 of the Consulting Agreement further provides that "[t]his Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral." *Id.* at Page 3.

59.     In sum, the Consulting Agreement was: (1) an arm's length transaction that was reduced to writing; (2) under the presence of and review by an independent attorney for Defendant ELDER and G3 Analytics, LLC; and (3) the terms of compensation are more than reasonable and fair to Defendant ELDER and G3 Analytics, LLC.

60.     Subsequently, on September 26, 2010, THE FERRARO LAW FIRM, P.A. was retained by TARS to represent it in connection with the pursuit of the life insurance escheatment *Qui Tam* whistleblower action under the False Claim Acts of certain states (hereinafter referred to as the "Life Insurance *Qui Tam* Contract"). *See* The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS dated September 26, 2010 (**Exhibit D**).

61.     The Life Insurance *Qui Tam* Contract states in Paragraph 1 as follows:

> 1.     Scope of Representation: *Client retains Attorney to represent Client only in connection with the pursuit of a Qui Tam Whistleblower action under the False Claim Acts of certain states… for allegations arising from a failure of life insurance companies to escheat unclaimed funds from life insurance policies to the respective states in violation of law.*

*Id.* at Page 1.

62.     The Life Insurance *Qui Tam* Contract was signed by Steven Lynam, in his capacity as President of TARS, and by Jeffrey Sloman, Esq. and Russell Koonin, Esq., on behalf of THE FERRARO LAW FIRM, P.A. *Id*. at Page 6.

63.     Neither Defendant ELDER nor G3 Analytics, LLC are signatories to the Life Insurance *Qui Tam* Contract.

64.     Pursuant to the terms of the Life Insurance *Qui Tam* Contract, TARS is bound and obligated to pay THE FERRARO LAW FIRM, P.A. a contingent fee for its legal services. *Id*. at Page 2.

65.     At all times material to this cause of action, THE FERRARO LAW FIRM, P.A. has competently and diligently represented TARS in connection with its life insurance escheatment *Qui Tam* whistleblower action over the past six (6) years and said action still remains pending.

66.     Upon information and belief, on or about 2014, Defendant SCRANTOM was retained by Defendant ELDER as a litigation funding consultant.

67.     Defendant SCRANTOM was subsequently retained as General Counsel for all of Defendant ELDERS' companies, including, but not limited to, G3 Analytics, LLC.

68.     On or about December 9, 2015, and continuing through the filing of the present Complaint, Defendants SCRANTOM and ELDER have tortuously interfered with the ongoing attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS.

69.     Upon information and belief, Defendant SCRANTOM was the architect of a scheme devised to collude with Defendant ELDER in a concerted effort to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

70.     Specifically, Defendants SCRANTOM and ELDER have intentionally asserted false and patently misleading claims of ethical violations, professional negligence and breach of fiduciary claims against THE FERRARO LAW FIRM, P.A.  Defendants SCRANTOM and ELDER's intentional and tortious conduct amounts to a deliberate attempt to have TARS terminate the legal representation agreement it has with THE FERRARO LAW FIRM, P.A. and to further deprive THE FERRARO LAW FIRM, P.A. of its contingent attorney's fee.

71.     Moreover, Defendant SCRANTOM and ELDER have no legal standing to challenge THE FERRARO LAW FIRM, P.A.'s legal representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action.

72.     Notwithstanding the foregoing, Defendants SCRANTOM and ELDER filed a frivolous demand for arbitration under the guise of the Tax Whistleblower Contract in the case styled, *Kenneth Platt Elder vs. The Ferraro Law Firm*, Case No. 01-15-0006-0909, pending before the Honorable Ronald C. Dresnick in the American Arbitration Association (hereinafter referred to as the "Florida arbitration matter").

73.     Despite not being licensed to practice law in the State of Florida nor authorized to engage in a limited appearance in the Florida arbitration matter, Defendant SCRANTOM filed the Florida arbitration matter as lead counsel for Defendant ELDER and continues to represent ELDER as co-lead counsel in the arbitration.

74.     Upon information and belief, Defendant SCRANTOM never filed a Motion to Appear *Pro Hac Vice* or a Verified Statement for Leave to Appear in the Florida arbitration matter as required by Rules 1-3.11 and 4-5.5 of the Rules Regulating the Florida Bar.  Upon further information and belief, Defendant SCRANTOM has also failed to notify The Florida Bar of his

legal representation of a non-Florida resident in the Florida arbitration matter and has further failed to pay the applicable filing fee with The Florida Bar as required by Rule 1-3.11.

75.     The Florida arbitration matter alleges specious and unfounded claims of ethical violations, professional negligence and breach of fiduciary duty all designed to result in a termination of the attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS. The Florida arbitration matter is further designed to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action by improperly seeking a disgorgement and redemption of THE FERRARO LAW FIRM, P.A.'s attorney's fees.

76.     The crux of the Defendants' claims alleged in the Florida arbitration matter arise out of the unsubstantiated and patently false claim that Defendant ELDER, as opposed to TARS, is the sole and exclusive owner of the life insurance escheatment *Qui Tam* whistleblower action brought by TARS.

77.     Defendants SCRANTOM and ELDER's objective in the Florida arbitration matter is to take over the ownership of the life insurance escheatment *Qui Tam* whistleblower action so that they can terminate THE FERRARO LAW FIRM, P.A. to avoid paying THE FERRARO LAW FIRM, P.A. its contingent attorney's fees.

78.     The reason that Defendant ELDER, and his counsel, Defendant SCRANTOM, are interfering with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A. is because Defendant SCRANTOM setup a usurious and crippling litigation finance arrangement whereby ELDER and the Members of TARS borrowed Six Million Dollars ($6,000,000.00) at an interest rate of 100% per year (hereinafter referred to as the "usurious loan").

79.     The usurious loan was entered into on November 21, 2014, and now has a balance of approximately Twenty-One Million Dollars ($21,000,000.00).

80.     The effect of the usurious loan has been to create undue financial pressure on Defendant ELDER to the point that it has precipitated the tortious interference with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A. with the hope of avoiding the firm's contingent attorney's fee.

81.     TARS does not and has never had any interest in terminating its attorney-client relationship with THE FERRARO LAW FIRM, P.A.

82.     At no time did TARS solicit or request any advice from Defendants SCRANTOM and ELDER regarding its ongoing attorney-client relationship with THE FERRARO LAW FIRM, P.A.

83.     Even though Defendant ELDER has no enforceable right or standing to interfere with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A., he, along with Defendant SCRANTOM, because of the undue financial pressure they have created on themselves by being a party to the usurious loan have chosen to tortuously interfere with the hope that they can shift THE FERRARO LAW FIRM, P.A.'s rightfully earned contingent attorney's fees to themselves.

84.     The tortious interference by Defendants SCRANTOM and ELDER has inhibited the ability of THE FERRARO LAW FIRM, P.A. to represent TARS in the life insurance escheatment *Qui Tam* whistleblower action and the firm's work in other matters, because THE FERRARO LAW FIRM, P.A. has had to dedicate a significant amount of time and resources to defend itself in the frivolous Florida arbitration matter brought by Defendants SCRANTOM and ELDER.

85.     THE FERRARO LAW FIRM, P.A. has a high likelihood of success in the Florida arbitration matter.  As a result, Defendants SCRANTOM and ELDER have threatened to pursue these same claims in a Florida state court and/or other forums in the likely event that THE FERRARO LAW FIRM, P.A. is the prevailing party in the arbitration.  *See* e-mail from Defendant SCRANTOM addressed to the Arbitrator dated February 13, 2017 (**Exhibit E**).

86.     Accordingly, Defendants SCRANTOM and ELDER's tortious conduct is ongoing and continuing in nature.

87.     As a result of the frivolous litigation that was commenced by Defendants SCRANTOM and ELDER against THE FERRARO LAW FIRM, P.A., the firm has incurred legal expenses and costs in having to defend itself from these baseless claims.

88.     All conditions precedent to the bringing of this action have been performed, have occurred or have been waived.

89.     As a result of the matters hereinafter described, Plaintiff, THE FERRARO LAW FIRM, P.A., was required to retain the undersigned to represent it in this matter and has bound and obligated itself to pay the firm a reasonable fee for its services.

## COUNT I

### CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT TIMOTHY D. SCRANTOM, ESQ.

90.     Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 89 above, and further alleges the following:

91.     At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing

representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

92.    Defendant SCRANTOM had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

93.    Defendant SCRANTOM intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

94.    As a direct and proximate result of Defendant SCRANTOM's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, attorney's fees and costs for its defense in the Florida arbitration matter and in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, TIMOTHY D. SCRANTOM, ESQ., in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT II

### CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT SCRANTOM DULLES INTERNATIONAL, PLLC

95.     Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 89 above, and further alleges the following:

96.     At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client business relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

97.     Defendant SCRANTOM DULLES, at all times material, acting by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

98.     Defendant SCRANTOM DULLES, directly and/or acting through its officers, employees, agents, apparent agents and/or those over whom it exercised control including, but not limited to, Defendant SCRANTOM, intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

99.     As a direct and proximate result of Defendant SCRANTOM DULLES's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, attorney's fees and costs for its defense in the Florida arbitration matter and in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, SCRANTOM DULLES INTERNATIONAL, PLLC, a South Carolina professional limited liability company, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT III

## CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT TEN STATE INTERNATIONAL LAW, PLLC

100.    Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 89 above, and further alleges the following:

101.    At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client business relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

102.    Defendant TEN STATE INTERNATIONAL LAW, at all times material, acting by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

103.    Defendant TEN STATE INTERNATIONAL LAW, directly and/or acting through its officers, employees, agents, apparent agents and/or those over whom it exercised control including, but not limited to, Defendant SCRANTOM, intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

104.    As a direct and proximate result of Defendant TEN STATE INTERNATIONAL LAW's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, attorney's fees and costs for its defense in the Florida arbitration matter and in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action. The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, TEN STATE INTERNATIONAL LAW, PLLC, a South Carolina professional limited

liability company, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT IV

### CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT KENNETH PLATT ELDER

105.    Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 89 above, and further alleges the following:

106.    At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

107.    Defendant ELDER had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

108.    Defendant ELDER intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

109.     As a direct and proximate result of Defendant ELDER's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, attorney's fees and costs for its defense in the Florida arbitration matter and in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, KENNETH PLATT ELDER, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

### COUNT V

### REQUEST FOR DECLARATORY JUDGMENT THAT DEFENDANT ELDER HAS NO ENFORCEABLE RIGHTS AND/OR LACKS STANDING TO ASSERT ANY RIGHTS UNDER THE LIFE INSURANCE *QUI TAM* CONTRACT ENTERED INTO BETWEEN THE FERRARO LAW FIRM, P.A. AND TARS

110.     Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 89 above, and further alleges the following:

111.     On September 26, 2010, THE FERRARO LAW FIRM, P.A. entered in a lawful and binding contract of legal representation with TARS in connection with TARS's representation as a relator in its life insurance escheatment *Qui Tam* whistleblower action. *See* Life Insurance *Qui Tam* Contract (**Exhibit D**).

112.    The only parties to the Life Insurance *Qui Tam* Contract are THE FERRARO LAW FIRM, P.A. and TARS.  Further, the only signatories to the Life Insurance *Qui Tam* Contract were Steven Lynam, in his capacity as President of TARS, and Jeffrey Sloman, Esq. and Russell Koonin, Esq., in their capacity as attorneys and employees of THE FERRARO LAW FIRM, P.A. *Id*. at Page 6.

113.    Defendant ELDER or his company, G3 Analytics, LLC, are not parties to or signatories to the Life Insurance *Qui Tam* Contract.

114.    Accordingly, Defendant ELDER has no enforceable contractual rights and/or lacks standing to assert any rights under the Life Insurance *Qui Tam* Contract, including, but not limited to, the right to terminate, cancel, amend, rescind or otherwise modify any terms of the Life Insurance *Qui Tam* Contract.  Moreover, Defendant ELDER has no enforceable contractual rights and/or lacks standing to assert any purported claims for professional negligence or breach of fiduciary duty arising out of THE FERRARO LAW FIRM, P.A.'s representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action.

115.    Nevertheless, Defendant ELDER filed the aforementioned Florida arbitration matter alleging, among other things, that "all claims for misconduct or negligence or lawyer malpractice relating to the [Life Insurance *Qui Tam* Contract] belong to [ELDER] who shall have full rights to enforce and recover on account of such relationships."  Defendant ELDER further seeks a rescission of the Life Insurance *Qui Tam* Contract, termination of the attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS, and disgorgement and redemption of any and all claims by THE FERRARO LAW FIRM, P.A. to its attorney's contingent fee compensation arising out its representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action.

116.     Based on the foregoing, there is a bona fide, actual, present and practical need for a declaration that Defendant ELDER has no enforceable rights and/or lacks standing to assert any rights under the Life Insurance *Qui Tam* Contract entered into between THE FERRARO LAW FIRM, P.A. and TARS.

117.     This request for declaration relates to the present controversy between THE FERRARO LAW FIRM, P.A. and Defendant ELDER in the pending Florida arbitration matter. Because there is a high likelihood that THE FERRARO LAW FIRM, P.A. will prevail in the Florida arbitration matter, as these claims have no contractual nexus to the Tax Whistleblower Contract, Defendant ELDER has threatened to bring a separate lawsuit against the Plaintiff asserting these same claims. *See* e-mail from Defendant SCRANTOM addressed to the Arbitrator dated February 13, 2017 (**Exhibit E**).

118.     THE FERRARO LAW FIRM, P.A. is presently in doubt as to its rights and obligations and the parties have an actual, present, adversarial and antagonistic interest in determining THE FERRARO LAW FIRM, P.A.'s rights and obligations under the Life Insurance *Qui Tam* Contract, including, whether Defendant ELDER has any enforceable rights and/or standing to assert any rights against THE FERRARO LAW FIRM, P.A., under the Life Insurance *Qui Tam* Contract.

119.     THE FERRARO LAW FIRM, P.A. and Defendant ELDER's antagonistic and adverse interests are before the Court by proper process and the relief sought is not merely the giving of legal advice by the Court or to answer questions propounded from curiosity.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, KENNETH PLATT ELDER, as follows:

A.      Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to assert any rights under the Life Insurance *Qui Tam* Contract against THE FERRARO LAW FIRM, P.A., including, but not limited to, the right to terminate, cancel, amend, rescind or otherwise modify any terms of the Life Insurance *Qui Tam* Contract.

B.      Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to assert any purported claims for professional negligence or breach of fiduciary duty against THE FERRARO LAW FIRM, P.A., arising out of the firm's representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action;

C.      Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to bring a claim for: (1) rescission of the Life Insurance *Qui Tam* Contract; (2) termination of the attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS; or (3) disgorgement and redemption of any and all claims by THE FERRARO LAW FIRM, P.A. to its attorney's contingent fee compensation arising out its representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action; and

D.      That the Court grant such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, THE FERRARO LAW FIRM, P.A., demands a trial by jury of all issues triable as a matter of right by a jury.

DATED this <u>17</u><sup>th</sup> day of February, 2017.

Respectfully submitted,

**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiff*
Brickell World Plaza
600 Brickell Avenue
38th Floor
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:_____
        **Janpaul Portal, Esq.**
        Florida Bar No.: 0567264
        jpp@ferrarolaw.com