UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 17-20640-CV-UNGARO

THE FERRARO LAW FIRM, P.A.,
a Florida professional association,

    Plaintiff,

vs.

TIMOTHY D. SCRANTOM, ESQ.,
SCRANTOM DULLES INTERNATIONAL,
PLLC, a South Carolina professional limited
liability company, TEN STATE INTERNATIONAL
LAW, PLLC, a South Carolina professional limited
liability company, and KENNETH PLATT ELDER,

    Defendants.
_____/

**DEFENDANTS TIMOTHY D. SCRANTOM, ESQ., SCRANTOM DULLES
INTERNATIONAL, PLLC, TEN STATE INTERNATIONAL LAW, PLLC, AND
KENNETH PLATT ELDER'S MOTION TO DISMISS[1]**

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, Defendants Timothy Scrantom, Esq. ("Scrantom"), Scrantom Dulles International, PLLC, Ten State International Law, PLLC, and Kenneth Platt Elder ("Elder") (together, "Defendants") move this Court for an order dismissing the First Amended Complaint and Demand for Jury Trial and for Declaratory Judgment ("Amended Complaint") filed by Plaintiff the Ferraro Law Firm, P.A. ("Plaintiff"). This Court lacks subject matter jurisdiction over the present matter, and, in any event, Plaintiff alleges only conduct that is immune under the litigation privilege; moreover, Plaintiff not only fails to state a claim in tort upon which relief can be granted, but actually pleads that it has no such claim by stating the very "contract" at issue has not been breached or altered.

**Background and Introduction**

As meticulously pled in the pending parallel arbitration before the American Arbitration Association, *Kenneth Platt Elder vs. The Ferraro Firm P.A.*, Case No. 01-15-0006-0909, filed in

---

[1] Elder expressly reserves his right to arbitrate under the Tax Whistleblower Contract, attached to Plaintiff's Amended Complaint at Exhibit A.

December, 2015 under an Amended Statement of Claim ("AAA Statement of Claim"), Plaintiff and Defendant Elder are currently engaged in a pending arbitration. (*See* Amended Complaint, ¶¶ 78 *et seq.*). The following facts are drawn from the AAA Statement of Claim.[2]

In 2008, Elder hired Plaintiff in Washington DC to represent him in tax whistleblower claims he had conceived and designed. Elder and Plaintiff entered an engagement agreement that is currently at issue in a related arbitration action discussed more fully below. During the course of this representation, Elder (acting alone) developed additional claims using his vast experience in unclaimed funds and name-matching technology and software. These additional claims were potential False Claims Act (qui tam) ("FCA") cases against major life insurance companies who failed to escheat to state governments the death benefits of life insurance policies where no beneficiary could be located within a statutory period of time.

Elder presented his FCA insurance claims to Plaintiff in 2010. The Ferraro Firm partners were eager to take on the claims. To permit Elder to achieve some anonymity in prosecuting the claims, Elder's lawyers at the Ferraro Firm proposed that they use a company they controlled, TARS, to file the claims as "relator," acting as his nominee or agent. Under this arrangement, Elder's lawyers proposed that TARS take a small percentage of the recoveries and hire the Ferraro Firm as counsel to the relator. Elder never transferred, licensed, or assigned the FCA claims or the underlying technology or associated intellectual property to the lawyers' company, TARS. Indeed, there was no understanding or writing at all between Elder and TARS with respect to their

---

[2] The Court may consider documents beyond the face of the pleading where a plaintiff "refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Cook v. Carnival Corp.*, No. 1:13-CV-23803-UU, 2014 WL 11906602, at *3 (S.D. Fla. Mar. 3, 2014) (Ungaro, J.) (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.")). Defendants note that Plaintiff alleges (and bases its claims on) the existence of the arbitration and even quotes Elder's Statement of Claim (*See* Amended Complaint at ¶¶ 81–83, 121), without attaching the document. Defendants have not attached the statement to this motion due to confidentiality concerns, but will seek leave to file it under seal if its contents, which should not be in dispute, become an issue. That said, this background and introduction is to put this dispute in context, but the background and introduction are not relied on by Defendants as grounds for dismissal, which is appropriate based on the four corners of the Amended Complaint.

arrangement except for a "consulting agreement" prepared and recommended by Plaintiff. Nor was Elder ever an owner of TARS; rather, at the Ferraro Firm's advice, Elder and a company he owned became independent "consultants" to TARS.

In the years that have passed since Elder first approached Plaintiff about the FCA insurance claims in 2010, not much progress has been made. The more Elder sought information from Plaintiff about the status and progress of the claims, the less information Elder received. TARS and Plaintiff took greater and greater control over the FCA claims and Elder's intellectual property in violation of the nominee/agency relationship between them. Elder has also been advised recently by a Florida ethics expert that the transactions devised by Plaintiff where TARS filed the claims as his nominee/agent were unethical and prohibited under Florida ethics rules and other legal principles.

Because Plaintiff has refused to respond in any meaningful way to Elder's concerns, Elder initiated an arbitration action under his original, and only, written engagement agreement with Plaintiff: the Tax Whistleblower Contract. The claims in the arbitration proceeding arise from Plaintiff's breach of various duties owed to Elder as Elder's legal counsel, as outlined above. Plaintiff has forcefully argued that the arbitration provision in the Tax Whistleblower Contract bears no nexus whatsoever to Elder's claims, and, thus, that the Tribunal has no jurisdiction to hear any of them.

In an apparent effort to punish Elder for filing the arbitration, Plaintiff filed the present, frivolous lawsuit against Elder and his counsel, Scrantom (personally) and against Scrantom's law firm. Plaintiff even named in this suit a law firm Scrantom used to be associated with many years ago. Plaintiff's remarkable claim in the lawsuit is that Elder, Scrantom, and his past and current law firms have committed tortious interference with the relationship between TARS and the Ferraro Law Firm *by simply filing the arbitration*. (*See* Amended Complaint, Counts I – IV at ¶¶ 96 – 115). Astonishingly, Plaintiff has included Elder's counsel in the lawsuit, despite the uniform condemnation of lawsuits filed against opposing counsel for representing their client in legal proceedings. Plaintiff also seeks a declaratory judgment on one of the very issues raised in the arbitration, to wit, the scope of Plaintiff's duties to Elder arising from the written engagement agreement. (*See id.*, Count V at ¶¶ 116 – 125). The arbitration remains ongoing.

**Argument**

Plaintiff's Amended Complaint fails, because (1) the Court lacks jurisdiction over the present matter, (2) Plaintiff fails to state and cannot state a claim upon which relief can be granted, and, in any event, (3) Plaintiff's claims are barred by the litigation privilege.  Defendants address each deficiency in turn.

I.      **The Court lacks jurisdiction over the present matter.**

It is axiomatic that federal courts are courts of limited jurisdiction.  They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1289 (11th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Here, Plaintiff's Amended Complaint seeks to invoke this Court's subject matter jurisdiction under the diversity of citizenship statute, 28 U.S.C. § 1332.  (Amended Complaint at ¶¶ 1, 25).

Title 28, section 1332 of the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1).

> Generally, to satisfy the amount-in-controversy requirement for diversity jurisdiction, a plaintiff must establish that a good faith estimated value of his or her claim(s) against a defendant exceeds the statutorily required amount. *E.g., Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). To justify dismissal, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount[.]" *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).
>
> However, it is well-established that "where jurisdiction is based on a claim for indeterminate damages, the . . . 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins.*, 329 F.3d at 807; *see also Bradley v. Kelly Services, Inc.*, 224 Fed. Appx. 893, 894–95 (11th Cir. 2007) (quoting *Federated Mut. Ins.* to dismiss for lack of jurisdiction). . . .

*Malekmarzban v. Levine*, No. 14-20313-CIV, 2014 WL 1600576, at *1 (S.D. Fla. Apr. 21, 2014).

In the present matter, Plaintiff alleges that "the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and any attorney fees." (Amended Complaint at ¶ 25).  This meager allegation – unburdened by any factual support

4

– is insufficient to demonstrate that Plaintiff has met the amount-in-controversy requirement of 28 U.S.C. § 1332(a)(1) for any of Plaintiff's claims. In the context of removal jurisdiction, the Eleventh Circuit has instructed that "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). The same standard applies to determine the sufficiency of Plaintiff's damage allegations here.

Plaintiff's other damages allegations are equally conclusory. For example, in its tortious interference claims, Plaintiff contends:

> . . . THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, attorney's fees and costs for its defense in the Florida arbitration matter and in prosecuting the instant matter, as well as the ***prospective*** loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action. The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

(Amended Complaint at ¶ 100; *see also id.* at ¶¶ 105, 110, 115, regarding Counts II, III, IV, respectively) (emphasis added). Stated differently, Plaintiff's damages claim amounts to: (1) attorneys' fees in the present matter, (2) attorneys' fees in the related arbitration, and (2) *prospective* attorneys' fees based on its contractual relationship with TARS.

"The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co., LLC*, 329 F.3d at 808 n.4. As to its first category of damages, Plaintiff's Amended Complaint fails to cite a contract or statute that supports its request for attorney's fees expended in the present matter (*See* Amended Complaint), and none exists. Plaintiff's request for attorneys' fees expended in the related arbitration proceedings cannot form the basis for damages in this action. Any hypothetical right Plaintiff might have to recover fees in the arbitration is a claim that is subject to arbitration pursuant to the Tax Whistleblower Contract, and must be brought in the arbitration.[3]

---

[3] Indeed, although it is beyond the four corners of the Amended Complaint, the Court should know that Plaintiff has actually filed a motion for a fee award in the arbitration, and that motion is currently pending.

5

#50093957_v1

Finally, Plaintiff's request for *prospective* attorneys' fees stemming from Defendants' supposed tortious interference is, at best, hypothetical. *See* A*dams Arms, LLC v. Unified Weapon Sys., Inc.*, No. 8:16-CV-1503-T-33AEP, 2017 WL 519273, at *6 (M.D. Fla. Feb. 8, 2017) (To support a claim for tortious interference, Florida law "requires actual harm to a business relationship, as opposed to merely a suspicion or unsupported and speculative supposition of harm."). But Plaintiff's hypothetical loss of a fee in future is defeated by Plaintiff's allegation that *there has been no interference. See infra* at pp. 9 – 11.

Plaintiff is required to satisfy the amount in controversy even as to its claim for declaratory relief. Plaintiff has failed in the Amended Complaint to reduce the speculative benefit resulting from its requested declaratory relief to *any* monetary amount, and therefore its claim for equitable relief cannot satisfy the amount in controversy requirement.[4] *See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.,* 120 F.3d 216, 221-22 (11th Cir. 1997) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted… If we determine that the monetary value of the injunctive relief to the class plaintiffs is 'too speculative and immeasurable to satisfy the amount in controversy requirement' we need not even reach the question of whether such relief must be considered in the aggregate or pro rata.") *See also Newman & Sons, Inc. v. Washington Suburban Sanitary Comm'n,* 696 F.Supp. 160, 162 (D. Md. 1988) (concluding that benefit from a rebid of a contract is too speculative to satisfy the jurisdictional amount), *aff'd,* 873 F.2d 1438 (4th Cir.), *cert. denied,* 493 U.S. 854 (1989), and *Texas Acorn v. Texas Area 5 Health Systems Agency, Inc.,* 559 F.2d 1019, 1023-24 (5th Cir. 1977).

Simply put, Plaintiff has failed to satisfy its burden of establishing that the Court may exercise diversity jurisdiction over any claims in the present matter. This is a burden Plaintiff cannot meet under the facts it chose to plead, and no construction of Plaintiff's factual allegations will support its claim to diversity jurisdiction. *Williams v. Jones*, No. 8:11-CV-2865-T-33TBM,

---

[4] As set forth above, Plaintiff incorrectly alleged that this Court has diversity jurisdiction over the present matter. (Amended Complaint at ¶¶ 1, 25). Notably, however, Plaintiff cannot manufacture federal question jurisdiction by attempting to allege a claim under the Declaratory Judgment Act. *Bakker v. Town of Surfside*, No. 12-24053-CIV, 2013 WL 3475173, at *2 (S.D. Fla. July 10, 2013) ("The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, did not expand federal jurisdiction but merely provides courts with an additional remedy *when an independent basis for jurisdiction already exists.*") (emphasis added).

6

2012 WL 1192100, at *3 (M.D. Fla. Apr. 10, 2012) ("[T]he burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof.") (citing *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004)).  Accordingly, this action is not properly before the Court, and Plaintiff's Amended Complaint should be dismissed.  Even if the Court were to determine that it has jurisdiction over one or more claims in the present matter, Plaintiff fails to state a claim upon which relief could be granted.

II.     **Plaintiff fails to state a claim upon which relief could be granted.**

A motion to dismiss tests whether a complaint "raise[s] a right to relief above the speculative level."  *Southern Pan Servs. Co. v. S.B. Ballard Const. Co.*, No. 3:07-cv-592-J-33TEM, 2008 WL 3200236, at *2 (M.D. Fla. Aug. 6, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When considering a motion to dismiss, the Court should "evaluate a complaint on two dimensions."  *Id*.  The Court should "determine whether the complaint addresses all the material elements necessary to recovery under some legal theory" and "whether the complaint addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation."  *Id*.

Although the Court should "accept all the factual allegations in the complaint as true and [] evaluate all inferences derived from those facts in the light most favorable to the [non-movant,] . . . when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate."  *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1313 (S.D. Fla. 2002). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

A.      **Plaintiff has not properly alleged a claim for tortious interference.**

1.     <u>Plaintiff admits it has suffered no harm as a result of the alleged interference.</u>  In order to state a claim for tortious interference with a business relationship, Plaintiff is required to demonstrate: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Enteris Biopharma, Inc. v. Clinical*

7

*Pharmacology of Miami, Inc.*, No. 1:14-CV-22770-UU, 2015 WL 12085848, at *10 (S.D. Fla. Mar. 20, 2015) (Ungaro, J.) (citation omitted) (emphasis added). "Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." *Id.* And "[t]he requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship." *Id.* (citation omitted). The standard is a "but for" test, which Plaintiff cannot meet.

Here, Plaintiff alleges that Defendants have tortiously interfered with its business relationship with a business owned and controlled by two of its lawyer/partners (TARS) by initiating the underlying arbitration proceedings. (*See, e.g.*, Amended Complaint at ¶ 81). As explained below, those actions are privileged under Florida law, and Plaintiff's claims fail on their face. Plaintiff further claims that the arbitration proceedings have somehow compromised its business relationship with TARS, despite alleging also that "TARS does not and has never had any interest in terminating its attorney-client relationship with THE FERRARO LAW FIRM, P.A." (*Id.* at ¶ 87). Plaintiff's emphatic allegation that its relationship with TARS remains and will always be intact establishes the utter falsity of Plaintiff's core claim. "Unsuccessful interference is simply not the kind of interference upon which a tort may be founded." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994) (citation omitted). Plaintiff's adamancy that the relationship between it and TARS remains intact is not surprising since Plaintiff pleads that TARS was formed and is owned by two lawyer/partners in the Ferraro Law Firm.

2. <u>Defendants' alleged acts were justified</u>. To give rise to actionable tortious interference, the acts must be "unjustified." It is clear from the Amended Complaint and the AAA Statement of Claim that Plaintiff, itself, foisted upon Defendant Elder the duty to arbitrate before the AAA any "disputes arising between them." (Amended Complaint, Ex. A at 4, ¶ 8). Therefore, by Plaintiff's own statements in the Amended Complaint and exhibits Plaintiff chose to attach to that Amended Complaint, Plaintiff *required* Defendant Elder to file the very arbitration proceedings that Plaintiff now disingenuously labels "tortious." There could be no clearer instance of "justification" than the Plaintiff demanding the Defendants to take the very action they took.

In the Amended Complaint, Plaintiff alleges several other reasons why Defendants' actions were "justified." As Plaintiff concedes, Elder's company, G3 Analytics, LLC, entered into a contract with TARS to "perform consulting work for [TARS] in providing information about

8

unremitted insurance proceeds for purposes of various Qui Tam lawsuits, support, and other related activities as directed by TARS." (Amended Complaint at ¶ 61; Exhibit B at 1). Plaintiff further alleges TARS, in turn, entered into the Life Insurance *Qui Tam* Contract, wherein Plaintiff agreed to represent TARS "in connection with the pursuit of a *Qui Tam* Whistleblower action under the False Claims Acts of certain states . . . for allegations arising from a failure of life insurance companies to escheat unclaimed funds from life insurance policies to the respective states in violation of law." (*Id.* at ¶ 67; Ex. D at 1). In other words, the two contracts are interrelated, and Elder is not a stranger to the relationship between Plaintiff and TARS. On this basis alone, Plaintiff's tortious interference claim against Elder cannot stand. *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship. A defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship.") (citation omitted).

      3.     <u>Plaintiff admits it has suffered no justiciable damage</u>. Further, as set forth above, Plaintiff fails to allege actual damages; indeed, its damages claim amounts to nothing more than a *prospective* loss of potential *contingent* attorneys' fees:

> The record shows that Delta continued to do business with Worldwide even after it received the letters. Worldwide argues that even without proof of actual losses, it could have recovered nominal damages. This is an incorrect assessment of Florida law, which, as previously mentioned, requires proof of damages as an essential element of a tortious interference claim.

*Worldwide Primates, Inc.*, 26 F.3d at 1092 (citation omitted). And, accepting the allegation that TARS has no interest in terminating its relationship with Plaintiff as true, this hypothetical loss will never occur. In sum, Plaintiff cannot maintain its claims for tortious interference against Defendants, because it fails to plead: (1) interference on the part of Defendants, let alone one that is "intentional and unjustified" or (2) actual damages, let alone those *caused by* Defendants' alleged interference. The Eleventh Circuit has awarded sanctions in the face of such baseless claims. *Id* at 1091. (The Eleventh Circuit reversed the district court upon determining that sanctions were appropriate where: "[T]he record amply supports the imposition of sanctions because it reflects no basis, either factual or legal, for Worldwide's lawsuit. Worldwide's claim

arises under Florida law. An integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship.").

4. <u>The tortious interference alleged by Plaintiff is not actionable</u>. Defendants filed the Arbitration to protect "legitimate business interests" under a contract between Defendant Elder and his law firm. Certainly, the law cannot countenance a claim by a lawyer that a suit under an attorney-client engagement agreement drafted by the lawyer could in any circumstances be tortious. Even leaving the lawyer-client basis for Defendant Elder's arbitration aside, since the nascence of tortious interference in *Chipley v. Atkinson,* 23 Fla. 206, 1 So. 934 (1887), the rule in Florida has been that "interference" in a business relationship by one acting in furtherance of legitimate business interests is *not* actionable. 1 So. at 939-40. There can be no claim for tortious interference "where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Genet Co. v. Annheuser-Busch, Inc.,* 498 So. 2d 683, 684 (Fla. 3d DCA 1986) (citations omitted). "[S]o long as improper means are not employed, activities taken to safeguard or promote one's own financial, and contractual interests are entirely non-actionable." *Ethyl Corp.,* 386 So. 2d at 1225 (citations omitted); *accord, e.g., Perez v. Rivero,* 534 So. 2d 914, 916 (Fla. 3d DCA 1988); *Adler Consulting Corp. v. Executive Life Ins. Co.,* 483 So. 2d 501, 502 (Fla. 3d DCA 1986); *Unistar Corp. v. Child,* 415 So. 2d 733, 735 (Fla. 3d DCA 1982) (*en banc*). It is clear from the nature and scope of the allegations in the AAA Statement of Claim that Defendants were seeking to protect Mr. Elder's "legitimate business interests" through that arbitration. Importantly, there is no allegation in the Amended Complaint that any Defendant acted out of malice.

Indeed, it is only when one acts *solely* out of malice and, therefore, without justification, that the privilege to protect one's business interests is unavailable. *Ethyl Corp.,* 386 So. 2d at 1225; *accord, e.g., Nordyne, Inc. v. Florida Mobile Home Supply, Inc.,* 625 So. 2d 1283, 1285-86 (Fla. 1st DCA 1995), *review dismissed*, 630 So. 2d 1100 (Fla. 1993); *McCurdy v. Collis,* 508 So. 2d 380, 383-84 (Fla. 1st DCA 1987), *review denied,* 518 So. 2d 1274 (Fla. 1987). "The existence of malice is key to the tort of tortious interference with a business relationship." *Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.,* 779 So. 2d 554, 557 (Fla. 5th DCA 2001). And, as the Florida Supreme Court held in *Chipley,* "[w]here one does an act which is legal in itself, and violates no right of another person, . . . the fact that the act is done from malice, or other bad motive towards another, *does not give the latter a right of action against the former*." 1 So. at 938

(emphasis supplied). Thus, "it is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will toward the plaintiff." *Ethyl Corp.,* 386 So. 2d at 1225. Accordingly, Plaintiff's tortious interference claims are without merit, and Counts I through IV should be dismissed.

### B. Plaintiff's request for declaratory judgment fails.

Count V of Plaintiff's Amended Complaint is brought pursuant to the Declaratory Judgment Act and purportedly seeks a declaration of Elder's rights under the Life Insurance *Qui Tam* Contract entered into between Plaintiff and TARS. (Amended Complaint at ¶¶ 116 – 125). Notably, Elder is not a party to the Life Insurance *Qui Tam* Contract and is not alleged to be. Thus, the declaration sought by Plaintiff is that a third party (Elder) has no rights under a contract between it and its law partners.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citation omitted). "It is well-settled that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Clark Const. Grp., LLC v. Travelers Excess & Surplus Lines Co.*, 470 F. Supp. 2d 1350, 1351 (M.D. Fla. 2006). As the Eleventh Circuit has cautioned,

> [T]he Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S.Ct. 1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

*Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330 (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). Toward that end, the *Ameritas* court enumerated a nonexhaustive list of "guideposts" to determine whether the court should abstain from considering the declaratory judgment action in favor of a parallel proceeding. *Id.* at 1331. Most relevant to the present matter, those factors include:

- Whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable; and

11

- Whether there is an alternative remedy that is better or more effective. *Id.*

Over fourteen (14) months ago, Elder filed an arbitration action to determine his rights, contractual or otherwise, stemming from his attorney-client relationship with Plaintiff. That matter is styled *Kenneth Platt Elder v. The Ferraro Law Firm*, Case No. 01-15-0006-0909, and is currently pending before the (Ret.) Honorable Ronald C. Dresnick with the American Arbitration Association. Throughout that proceeding, Judge Dresnick has grappled with the issues presently before the Court and has grown intimately familiar with the complex factual framework that forms the backdrop of this dispute – including without limitation the Life Insurance *Qui Tam* Contract and other contracts relevant to the relationship between Elder and Plaintiff. Judge Dresnick has further invested significant time in analyzing Florida law and its application to these issues. Consistent with these efforts, the Life Insurance *Qui Tam* Contract itself provides that its terms and conditions are "governed primarily by Florida law and the Florida Rules of Professional Conduct." (Amended Complaint, Ex. D at ¶ 18). Accordingly, principles of judicial economy and efficiency demand that Plaintiff pursue its claims in the previously filed and currently pending arbitration, which involves the same parties and issues.

The present lawsuit amounts to nothing more than Plaintiff's "procedural fencing," and the Court should exercise its broad discretion to decline jurisdiction over Plaintiff's request for declaratory relief. *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1329–30 (11th Cir. 2005) (applying an abuse of discretion standard in affirming the district court's decision to decline to exercise its jurisdiction over a declaratory judgment action that "amounted to unnecessary and inappropriate interference" with a parallel proceeding). Certainly, principles of equity would militate against this Court accepting Plaintiff's request for equitable relief in light of Plaintiff's inequitable treatment of Defendants, as described above.

Moreover, what Plaintiff really seeks is a declaratory judgment of Elder's rights and Plaintiff's obligations under the Tax Whistleblower Contract, to which Elder and Plaintiff *are* parties, but *those very rights and obligations are currently being litigated in the pending AAA arbitration.* Plaintiff's characterization of its claim as seeking to determine Elder's rights under the contract between Plaintiff and TARS is a thinly veiled attempt to avoid the mandatory arbitration provision in the Tax Whistleblower Contract. Based on the foregoing, the Court should decline to exercise its discretionary jurisdiction in favor of the pending parallel arbitration proceedings, especially given the "strong public policy in the State of Florida in favor of arbitration

12

as a means of settling disputes." *Nicor Int'l Corp. v. El Paso Corp.*, 318 F. Supp. 2d 1160, 1165 (S.D. Fla. 2004) (quoting *Roe v. Amica Mutual Ins. Co.*, 533 So.2d 279, 281 (Fla. 1988) ("Under Florida law . . . arbitration is a favored means of arbitration of dispute resolution. . . ."); *Alexander v. Minton*, 855 So. 2d 94, 96 (Fla. 2d DCA 2003) ("Florida favors arbitration to settle disputes outside the courtroom."); *Boston Bank of Commerce v. Morejon*, 786 So. 2d 1245, 1246–47 (Fla. 3d DCA 2001) ("Florida law strongly favors the resolution of disputes by way of arbitration. . . ."); *Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 751 So. 2d 143, 150 (Fla. 1st DCA 2000) (noting the "long-standing public policy in favor of arbitration proceedings and the expeditious resolution of cases through such proceedings"); *KFC Nat'l Management Co. v. Beauregard*, 739 So.2d 630, 630 (Fla. 5th DCA 1999) ("It is now an axiom of federal and Florida law that written agreements to arbitrate are binding and enforceable. Public policy favors arbitration as an efficient means of settling disputes, because it avoids delays and expenses of litigation."); *Beverly Hills Development Corp. v. George Wimpey, Inc.*, 661 So. 2d 969, 971 (Fla. 5th DCA 1995) ("There is a strong public policy favoring arbitration.")).

Even looking beyond the pleading deficiencies, however, Plaintiff's tortious interference claims are barred by Florida's litigation privilege.

## III. The litigation privilege bars all of Plaintiff's tortious interference claims.

### A. All Defendants are immune from Plaintiff's tort claims.

Defendants enjoy immunity from the tortious interference claims in the Amended Complaint based on the litigation privilege, and, therefore, Plaintiff's claims for that tort are barred. Florida has long recognized the litigation privilege. *E.g., Ange v. State*, 98 Fla. 538, 123 So. 916, 917 (1929). Since the inception of the privilege's recognition, it has extended "to the protection of the judge, parties, counsel and witnesses," and has been held to "arise[] immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminarily thereto." *Id*.

The litigation privilege is a matter of public policy and is ubiquitous in the common law. Case law throughout the country frowns upon a lawyer suing opposing counsel, generally considering it a despicable act. *See, e.g.*, *Pollock v. Superior Court*, 229 Cal. App. 3d 26, 29 (Ct. App. 1991) ("Simply put, the public policy of this state is not served by permitting attorneys to sue one another for omissions or representations made as officers of the court during the course of litigation."); *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex. App. 2000) ("[C]ase law frowns on suing

13

opposing counsel simply for representing a party in a judicial proceeding."); *Banco Intercontinental, S.A. v. Luis Alvarez*, No. 04-20727-Civ-Martinez/Klein, 2005 WL 6110565 (S.D. Fla. Jan. 20, 2005) ("[T]he proper way to defend a lawsuit is to follow the Federal Rules of Civil Procedure and not to sue opposing counsel."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1302 (11th Cir. 2003) ("[I]n this case, Plaintiffs could have filed a contempt motion before the trial court in the Underlying Litigation as a remedy for DuPont's misconduct. Plaintiffs chose instead to pursue fraud actions in subsequent litigation, which is precisely the strategy that the Florida Supreme Court intended to preclude by announcing the *Levin* rule.") (citations omitted); *Moore v. Schlesinger*, 150 F. Supp. 2d 1308, 1313 (M.D. Fla. 2001) (dismissing suit against defendant attorneys, explaining "Plaintiff could have raised his concerns regarding Defendants' alleged wrongful conduct during the proceedings in which they occurred or with a professional disciplinary body," and thus "Defendants . . . should not now face the threat of liability for their choice of litigation strategies.").

The litigation privilege is a centuries-old, well-settled protection, which declares "that judges, counsel, parties, and witnesses should be absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings, regardless of how false or malicious the statements may be, as long as the statements bear some relation to or connection with the subject of inquiry." *Delmonico v. Traynor*, 116 So.3d 1205, 1219 (Fla. 2013) (internal citations omitted) (discussing a case from 1591 recognizing the litigation privilege because "[the defamatory publication] was in [the] course of justice").

Florida's litigation privilege applies to shield judges, **counsel, parties**, and witnesses from liability as long as the allegedly defamatory statements were connected with or related to the subject of inquiry in the underlying lawsuit. *Id.* The present action seeks to impose liability on an opposing party (Elder), opposing counsel (Scrantom), and opposing counsel's previous and current law firms (Ten State International Law, PLLC, and Scrantom Dulles International, PLLC, respectively) based on acts performed in connection with the related arbitration proceedings. Florida's litigation privilege precludes this result. *Kidwell v. Gen. Motors Corp.*, 975 So. 2d 503 (Fla. 2d DCA 2007) (determining that an arbitration hearing, although informal, is a judicial or quasi-judicial proceeding, for purpose of immunity for acts occurring in course of proceedings).

Florida law further extends the absolute litigation privilege to claims of tortious interference with a business relationship and to other alleged tortious behavior. Accordingly,

14

Plaintiff's claims of tortious behavior involving acts done in connection with the related arbitration proceeding are barred by the litigation privilege. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.Co.*, 639 So. 2d 606, 608 (Fla. 1994) ("We find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior,…"); *Delmonico*, 116 So. 3d at 1217-18; *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute or of some other origin").

    **B. Defendants Scrantom, Scrantom Dulles, and Ten State are entitled to special immunity.**

Plaintiff alleges Scrantom is a lawyer. It does not allege Scrantom or his law firms were acting in any other capacity. Consequently, they are entitled to absolute immunity from suit for tort actions in Florida. *DelMonico*, 116 So. 3d at 1212 ("Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.") (citation omitted). This privilege is intended to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients." *Kurczaba v. Pollock*, 318 Ill.App.3d 686, 701–02, 252 Ill. Dec. 175, 742 N.E.2d 425 (2000). The privilege also fosters a free flow of honest information to a court or disciplinary tribunal. *Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165-66 (1st Dist. 2003). The preeminent RESTATEMENT (THIRD) THE LAW GOVERNING LAWYERS (2001), at §57(3) plainly states:

> A lawyer who advises or assists a client to make or break a contract, to enter into or dissolve a legal relationship, or to enter or not enter a contractual relation, is not liable to the nonclient for interference with contract or with prospective contractual relations or with a legal relationship, if the lawyer acts to advance the client's objectives without using wrongful means. *Id.* p. 430.

Comment g goes on to state: "it is immaterial that the lawyer hopes that the action will increase the lawyer's fees or reputation as a lawyer or takes satisfaction in the consequences to a nonclient." *Id.* p. 435. *See also* § 586 of the RESTATEMENT (SECOND) OF TORTS ("An attorney at law is <u>absolutely privileged</u> to publish defamatory matter concerning another in communications

preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.") (emphasis added).

Put simply, as a law firm, Plaintiff knows that Scrantom, Ten State International, and Scrantom Dulles enjoy absolute immunity from the very suit Plaintiff brought against them. Its act in this regard can only be characterized as malicious and wanton.

### C. Defendants' immunity should be addressed in this motion to dismiss.

It is proper to raise the litigation privilege bar in this motion to dismiss. *American Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.,* 810 So. 2d 996 (Fla. 4th DCA 2002), holds only that a litigation privilege immunity defense does not support dismissal when, to address the defense, the court must "go *beyond* the facts alleged in the complaint." *Id.* at 998 (emphasis added). But, because "in this case, the existence of the litigation privilege appears on the face of Plaintiffs' complaint," the trial court addressed the merits. (*See, e.g.,* Amended Complaint at ¶ 81). Where, as here, the complaint pleads the facts pertinent to an affirmative defense, that defense may be raised on a motion to dismiss. *Abele v. Sawyer,* 750 So. 2d 70, 75 (Fla. 4th DCA 1999). Moreover, the claims against Scrantom, Ten State International, and Scrantom Dulles could never survive under any reading of well-settled law. Based on the foregoing, Counts I through IV fail on their face.

### Conclusion

Plaintiff filed the present, frivolous lawsuit against Elder and his counsel, Scrantom (personally) and against Scrantom's current and past law firms, apparently in retaliation for the arbitration commenced by Elder. Plaintiff's remarkable claim is that Elder, Scrantom, and his past and current law firms have committed tortious interference with the relationship between TARS and the Ferraro Law Firm *by commencing an arbitration*. Nothing more. Plaintiff's claims are as meritless as they are offensive. Plaintiff's Amended Complaint fails because the Court lacks jurisdiction over the present matter, Plaintiff fails to state and cannot state a claim upon which relief can be granted, and, in any event, Plaintiff's claims are barred by the litigation privilege.

As set forth above, Plaintiff has failed to allege sufficiently that its claims satisfy the jurisdictional amount necessary to invoke this Court's diversity jurisdiction. Even if the Court were to exercise jurisdiction, Plaintiff's tortious interference claims (Counts I through IV) fail on their face under Florida's time-honored litigation privilege. Privilege issues aside, Plaintiff cannot

maintain its claims for tortious interference against Defendants, because (1) not only does Plaintiff fail to plead interference on the part of Defendants, Plaintiff affirmatively pleads that there has been and will be NO interference, and (2) Plaintiff fails to plead actual damages, let alone any *caused by* Defendants' alleged interference.  Even assuming Plaintiff articulated some shred of interference, Defendants were seeking to protect Mr. Elder's "legitimate business interests" through the arbitration, and, therefore, their conduct is not actionable.

Finally, Plaintiff's declaratory judgment claim (Count V) seeks resolution of a claim that has been teed up in the parallel arbitration for months and would be more efficiently resolved in that forum, which involves the same parties and issues. There is strong public policy in the State of Florida in favor of arbitration, and that is where this case belongs (and *is already pending*). Accordingly, Plaintiff's Amended Complaint fails both in procedure and pleading.

**WHEREFORE** Defendants Timothy Scrantom, Esq., Scrantom Dulles International, PLLC, Ten State International Law, PLLC, and Kenneth Platt Elder move this Court for an order dismissing the First Amended Complaint and Demand for Jury Trial and for Declaratory Judgment filed by Plaintiff the Ferraro Law Firm, P.A.

    Holland & Knight LLP

    */s/ Joseph H. Varner, III*
    Joseph H. Varner, III, Esq.
    Florida Bar No.: 0394904
    joe.varner@hklaw.com
    100 North Tampa Street, Suite 4100
    Tampa, Florida 33602
    Telephone: (813) 227-6703
    Facsimile: (813) 229-0134

    *Attorneys for Defendants*

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 20, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all counsel of record, including:

>Janpaul Portal, Esq.
>The Ferraro Law Firm, P.A.
>Brickell World Plaza
>600 Brickell Avenue, 38th Floor
>Miami, Florida 33131
>jpp@ferrarolaw.com
>Telephone: (305) 375-0111
>Facsimile: (305) 379-6222
>
>*Attorneys for Plaintiff*

      */s/Joseph H. Varner, III*
      Attorney