## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-cv-20640-UU

THE FERRARO LAW FIRM, P.A.,
  a Florida professional association,

        Plaintiff,

vs.

TIMOTHY D. SCRANTOM, ESQ.,
SCRANTOM DULLES INTERNATIONAL,
  PLLC, a South Carolina professional limited
  liability company,
TEN STATE INTERNATIONAL LAW, PLLC, a
  South Carolina professional limited liability
  company, and
KENNETH PLATT ELDER,

        Defendants.

_____/

## SECOND AMENDED COMPLAINT AND DEMAND
## FOR JURY TRIAL AND FOR DECLARATORY JUDGMENT

Plaintiff, THE FERRARO LAW FIRM, P.A., a Florida professional association, by and

through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 15(a)(2), hereby

files its Second Amended Complaint and Demand for Jury Trial and for Declaratory Judgment,

and sues the Defendants, TIMOTHY D. SCRANTOM, ESQ., SCRANTOM DULLES

INTERNATIONAL, PLLC, a South Carolina professional limited liability company, TEN STATE

INTERNATIONAL LAW, PLLC, a South Carolina professional limited liability company, and

KENNETH PLATT ELDER, for damages and states as follows:

## INTRODUCTION

1.      This a negligence action for tortious interference with a business relationship

pursuant to this Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.

2.      This is also a declaratory-judgment action brought under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201.

## PARTIES

3.      Plaintiff, THE FERRARO LAW FIRM, P.A., at all times material, was and is a Florida professional association, incorporated and existing under the laws of the State of Florida, with its principal place of business located at 600 Brickell Avenue, 38th Floor, Miami, Florida, and is otherwise a citizen of the State of Florida.  28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

4.      Defendant, TIMOTHY D. SCRANTOM, ESQ. (hereinafter referred to as "SCRANTOM"), at all times material, is a natural person of full age of majority who is a citizen of the State of South Carolina, resides in Mt. Pleasant, South Carolina, and is otherwise *sui juris*.

5.      At all times material, Defendant SCRANTOM was and is a lawyer licensed to practice in the State of South Carolina.

6.      Upon information and belief, and at all times material, Defendant SCRANTOM is neither licensed nor authorized to engage in the practice of law in Florida.

7.      Upon information and belief, and at all times material, Defendant SCRANTOM engaged in the unlicensed practice of law by appearing as lead counsel for Defendant KENNETH PLATT ELDER, a non-Florida resident client, in an arbitration proceeding pending in Miami, Miami-Dade County, Florida, in violation of Rules 1-3.11 and 4-5.5 of the Rules Regulating The Florida Bar.

8.      SCRANTOM DULLES INTERNATIONAL, PLLC (hereinafter referred to as "SCRANTOM DULLES"), at all times material, was and is a professional limited liability

company organized and existing under the laws of the District of Columbia, with its principal place of business located at 90 East Bay Street, Charleston, South Carolina.

9.  Upon information and belief, and at all times material, the constituent members of Defendant SCRANTOM DULLES were and are:

a.  Defendant Timothy D. Scrantom, Esq.
200 Bank Street
Mt. Pleasant, South Carolina 29464

b.  Frederick H. Dulles, Esq.
90 East Bay Street
Charleston, South Carolina 29401

10.  Upon further information and belief, the Defendant SCRANTOM and Mr. Dulles, as the constituent members of Defendant SCRANTOM DULLES, at all times material, were and are citizens of the State of South Carolina.

11.  Based on the allegations set forth in Paragraphs 9 – 10, above, Defendant SCRANTOM DULLES, at all times material, was and is a citizen of the State of South Carolina. *See Mallory & Evans Contractors & Engineers, LLC v. Tuskegee University*, 663 F.3d 1304, 1305 (11th Cir. 2011); *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that "a limited liability company is a citizen of any state of which a member of the company is a citizen").

12.  At all times material, Defendant SCRANTOM DULLES held itself out as a law firm specializing in offshore and international disputes, and litigation finance.

13.  Upon information and belief, and at all times material, Defendant SCRANTOM DULLES was not authorized to conduct business and/or to render legal services in Florida, including, but not limited to, representing non-Florida resident clients in arbitration proceedings in Florida.

14.     Upon information and belief, and at all times material, Defendant SCRANTOM is an officer, employee and/or agent of Defendant SCRANTOM DULLES.

15.     At all times material to this cause of action, Defendant SCRANTOM DULLES acted by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, who at all times conducted themselves within the course and scope of their employment and/or agency relationships while engaging in the tortious acts and/or conduct described hereinafter.

16.     TEN STATE INTERNATIONAL LAW, PLLC (hereinafter referred to as "TEN STATE INTERNATIONAL LAW"), at all times material, was and is a professional limited liability company organized and existing under the laws of the District of Columbia, with its principal place of business located at 200 Bank Street, Mt. Pleasant, South Carolina.

17.     Upon information and belief, and at all times material, the constituent member of Defendant TEN STATE INTERNATIONAL LAW was and is:

     a.     Defendant Timothy D. Scrantom, Esq.
        200 Bank Street
        Mt. Pleasant, South Carolina 29464

18.     Upon further information and belief, Defendant Timothy D. Scrantom, Esq., as the constituent member of Defendant TEN STATE INTERNATIONAL LAW, at all times material, was and is a citizen of the State of South Carolina.

19.     Based on the allegations set forth in Paragraphs 17 – 18, above, Defendant TEN STATE INTERNATIONAL LAW, at all times material, was and is a citizen of the State of South Carolina. *See Mallory & Evans Contractors & Engineers, LLC v. Tuskegee University*, 663 F.3d 1304, 1305 (11th Cir. 2011); *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d

1020, 1022 (11th Cir. 2004) (holding that "a limited liability company is a citizen of any state of which a member of the company is a citizen").

20.     At all times material, Defendant TEN STATE INTERNATIONAL LAW held itself out as a law firm specializing in offshore and international disputes, and litigation finance.

21.     Upon information and belief, and at all times material, Defendant TEN STATE INTERNATIONAL LAW was not authorized to conduct business and/or to render legal services in Florida, including, but not limited to, representing non-Florida resident clients in arbitration in Florida.

22.     Upon information and belief, and at all times material, Defendant SCRANTOM is an officer, employee and/or agent of Defendant TEN STATE INTERNATIONAL LAW.

23.     At all times material to this cause of action, Defendant TEN STATE INTERNATIONAL LAW acted by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, who at all times conducted themselves within the course and scope of their employment and/or agency relationships while engaging in the tortious acts and/or conduct described hereinafter.

24.     Defendant, KENNETH PLATT ELDER (hereinafter referred to as "ELDER"), at all times material, is a natural person of full age of majority who is a citizen of the State of Michigan, resides in Bloomfield Hills, Michigan, and is otherwise *sui juris*.

JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and any attorney fees, and (2) there is complete diversity for purposes of this Court exercising subject-matter jurisdiction because

the Plaintiff and each individual Defendant and each constituent member of the unincorporated

business Defendants are citizens of different states.  28 U.S.C. § 1332(a)(1); *Mallory & Evans*

*Contractors & Engineers, LLC v. Tuskegee University*, 663 F.3d 1304 (11th Cir. 2011); *Rolling*

*Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020 (11th Cir. 2004).

26.     Venue is proper in the Miami Division of the United States District for the Southern

District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or

omissions giving rise to this Complaint occurred in Miami, Miami-Dade County, Florida, and the

Plaintiff, THE FERRARO LAW FIRM, P.A.'s, principal place of business is located in Miami,

Miami-Dade County, Florida.

CHOICE OF LAW

27.     Florida law governs the state law claims asserted herein by THE FERRARO LAW

FIRM, P.A. against the Defendants.

28.     The Defendants' acts and omissions described herein were implemented in the State

of Florida.

29.     Florida has a substantial interest in protecting the rights and interests of Florida

residents against wrongdoing by individuals and companies that commit tortious acts within the

State of Florida, which interest is greater than that of any other State or country.

GENERAL ALLEGATIONS

30.     THE FERRARO LAW FIRM, P.A. is a professional association that represents

clients in complex litigation matters, including, but not limited to, tax whistleblower claims for

violations of the Internal Revenue Laws pursuant to 26 U.S.C. § 7623 and *Qui Tam* whistleblower

claims under the Federal False Claims Act and the False Claims Acts of certain states.

31.     THE FERRARO LAW FIRM, P.A., has two shareholders: James L. Ferraro, Esq. and David A. Jagolinzer, Esq.

32.     On or about July 2008, Defendant ELDER contacted THE FERRARO LAW FIRM, P.A. to represent him in a tax whistleblower claim in order to assist the Internal Revenue Service (hereinafter referred to as "IRS") in the collection of outstanding federal tax obligations due by taxpayers from unclaimed fund accounts.

33.     Thereafter, on July 28, 2008, Defendant ELDER entered into a Contract of Representation (hereinafter referred to as the "Tax Whistleblower Contract") with THE FERRARO LAW FIRM, P.A. relating to his IRS tax whistleblower claim. *See* Tax Whistleblower Contract dated July 28, 2008 (**Exhibit A**).

34.     The Tax Whistleblower Contract was in writing and signed by Defendant ELDER in his individual capacity.  The scope of representation of the Tax Whistleblower Contract is clearly and unambiguously set forth in Paragraph 1, as follows:

> 1.     SCOPE OF REPRESENTATION
>
> *Attorney agrees to investigate, evaluate and pursue my possible tax whistleblower claim(s) for violations of the Internal Revenue laws, pursuant to 26 U.S.C.A. §7623, or other authority.*
>
> *After the investigation of my claim(s), Attorney shall have the right to withdraw and cancel this Contract if it is unable or unwilling to undertake the contemplated representation.   Thereafter, if Attorney agrees to pursue this claim after investigation and evaluation, I employee and retain attorney to represent my interests in the investigation, preparation and submission of materials required by the Internal Revenue Service ("IRS") or other administrative agency, and any and all other actions related to the claims(s) referenced above.*

*Id.* at ¶1.

35.     At all times material, Scott A. Knott, Esq. and Gregory S. Lynam, Esq., were non-equity partners and employees of THE FERRARO LAW FIRM, P.A.

36.     Scott A. Knott, Esq. and Gregory S. Lynam, Esq. worked on matters relating to the representation of Defendant ELDER in his IRS tax whistleblower claim under the Tax Whistleblower Contract.

37.     On September 20, 2011, the IRS rejected Defendant ELDER's IRS tax whistleblower claim No.: 2009-003676.

38.     On or about July, 2012, THE FERRARO LAW FIRM, P.A.'s representation of Defendant ELDER ceased under the Tax Whistleblower Contract after ELDER decided to abandon a resubmission of his previously rejected claim.

39.     From time to time through 2014, THE FERRARO LAW FIRM, P.A. examined other potential tax whistleblower submissions to the IRS proposed by Defendant ELDER for possible representation.

40.     None of these proposed potential tax whistleblower submissions were accepted by THE FERRARO LAW FIRM, P.A. and ever filed with the IRS on behalf of Defendant ELDER.

41.     At no time did THE FERRARO LAW FIRM, P.A. ever represent Defendant ELDER in any legal matter, of any nature whatsoever, other than his IRS tax whistleblower claim pursuant to the Tax Whistleblower Contract dated July 28, 2008, which was ultimately rejected by the IRS on September 20, 2011.

42.     On or about September 1, 2009, Total Asset Recovery Services LLC (hereinafter referred to as "TARS"), was formed as a Michigan limited liability company.

43.     The Members of TARS are: Gregory S. Lynam, Scott A. Knott, Thomas S. Prescott, Steven J. Lynam and RZE-Holdings, LLC.

44.     THE FERRARO LAW FIRM, P.A., James L. Ferraro, Esq. and David A. Jagolinzer, Esq. are not and have never been Members of TARS.

45.     THE FERRARO LAW FIRM, P.A., James L. Ferraro, Esq. and David A. Jagolinzer, Esq., have no other ownership interest in or control of TARS and/or of any of its business dealings.

46.     On or about On August 24, 2009, G3 Analytics LLC was created as a Michigan limited liability company.

47.     Upon information and belief, Defendant ELDER is the President and Sole Member of G3 Analytics LLC.

48.     G3 Analytics LLC was not a signatory to the Tax Whistleblower Contract.

49.     On or about September 2009, TARS and G3 Analytics LLC entered into a business relationship and began to work together on a "Treasury Bond Project" designed to find and recover unclaimed savings bonds for owners.  The Treasury Bond Project was ultimately unsuccessful.

50.     Almost one (1) year later, on or about August 2010, Defendant ELDER proposed a new business project he code-named the Q1 Project (hereinafter referred to as "Q1 Project") to Gregory S. Lynam, in his capacity as a Member of TARS.

51.     The Q1 Project was designed in part to help state governments identify life insurance companies that failed to escheat abandoned death benefits to the state when the beneficiary of the death benefit could not be located within a statutorily prescribed period of time.

52.     The Q1 Project includes *Qui Tam* life insurance whistleblower claims, but it does not include tax whistleblower claims alleging violations of the Internal Revenue laws.

53.     Upon information and belief, Defendant ELDER specifically requested that his name and/or involvement in the Q1 project remain anonymous because he had other unrelated ongoing business relationships with some of the same life insurance companies that would be the subject of any potential *Qui Tam* life insurance whistleblower claims. In exchange for and in

consideration for his anonymity, Defendant ELDER agreed to serve only as a consultant to TARS and further agreed that TARS would pursue the Q1 Project related *Qui Tam* life insurance whistleblower claims as the named relator.

54.     Accordingly, on August 20, 2010, Defendant ELDER, by and through G3 Analytics LLC, for good and valuable consideration, entered into a Consulting Agreement with TARS (hereinafter referred to as "the Consulting Agreement") for the purpose of pursuing the Q1 Project. *See* Consulting Agreement dated August 20, 2010 (**Exhibit B**).

55.     The Consulting Agreement was in writing.

56.     The Consulting Agreement was signed by Defendant ELDER in his capacity as President and Sole Member of G3 Analytics LLC.

57.     Steven Lynam signed the Consulting Agreement in his capacity as the President of TARS.

58.     Defendant ELDER had a Michigan lawyer, John Isgrigg Esq., who was not affiliated with THE FERRARO LAW FIRM, P.A., independently review the Consulting Agreement before Defendant ELDER signed it on behalf of G3 Analytics LLC.  *See* e-mail exchange dated August 12, 2010 – August 19, 2010 (**Exhibit C**).

59.     John Isgrigg Esq. suggested edits to the Consulting Agreement before Defendant ELDER signed it. *See id.*  The proposed edits and/or revisions were incorporated into the final version of the Consulting Agreement. *Id.*

60.     Upon information and belief, in addition to Attorney John Isgrigg, Defendant ELDER had eight attorneys other than THE FERRARO LAW FIRM, P.A. representing him at the time G3 Analytics entered into the Consulting Agreement with TARS.

61.     The Recitals set forth in the Consulting Agreement state as follows:

> *WHEREAS, the Company [TARS] is in need of assistance in obtaining information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits; and*
>
> ***WHEREAS, Consultant [G3 Analytics LLC] has agreed to perform consulting work for the Company [TARS] in providing information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits, support and other related activities as directed by the Company [TARS].***

S*ee* **Exhibit B** at Page 1. (emphasis added).

62.     Paragraph 2 of the Consulting Agreement provides that, as consideration for the consulting services to be performed by G3 Analytics LLC under the Consulting Agreement, TARS agreed to pay G3 Analytics LLC a contingent fee at the rate of seventy-five percent (75%) of the net proceeds from any "insurance-oriented Qui Tam lawsuit filed by or on behalf of the Company [TARS]." S*ee id.*

63.     Paragraph 6 of the Consulting Agreement provides that any notice or communication permitted or required by this Agreement shall be deemed effective when delivered to "G3 Analytics Care of Attorney John Isgrigg."  *Id.* at Page 2.

64.     Paragraph 7.1 of the Consulting Agreement further provides that "[t]his Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral." *Id.* at Page 3.

65.     In sum, the Consulting Agreement was: (1) an arm's length transaction that was reduced to writing; (2) under the presence of and review by an independent attorney for Defendant ELDER and G3 Analytics, LLC; and (3) the terms of compensation are more than reasonable and fair to Defendant ELDER and G3 Analytics, LLC.

66.     Subsequently, on September 26, 2010, THE FERRARO LAW FIRM, P.A. was retained by TARS to represent it in connection with the pursuit of the life insurance escheatment

*Qui Tam* whistleblower action under the False Claim Acts of certain states (hereinafter referred to as the "Life Insurance *Qui Tam* Contract"). *See* The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS dated September 26, 2010 (**Exhibit D**).

67.     The Life Insurance *Qui Tam* Contract states in Paragraph 1 as follows:

>    1.     <u>Scope of Representation</u>: *Client retains Attorney to represent Client only in connection with the pursuit of a Qui Tam Whistleblower action under the False Claim Acts of certain states… for allegations arising from a failure of life insurance companies to escheat unclaimed funds from life insurance policies to the respective states in violation of law.*

*Id*. at ¶ 1.

68.     The Life Insurance *Qui Tam* Contract was signed by Steven Lynam, in his capacity as President of TARS, and by Jeffrey Sloman, Esq. and Russell Koonin, Esq., on behalf of THE FERRARO LAW FIRM, P.A. *Id*. at Page 6.

69.     Neither Defendant ELDER nor G3 Analytics, LLC are signatories to the Life Insurance *Qui Tam* Contract.

70.     Pursuant to the terms of the Life Insurance *Qui Tam* Contract, TARS is bound and obligated to pay THE FERRARO LAW FIRM, P.A. "an attorney's fee of forty-percent (40%) of the gross amount of any settlement, judgment or recovery" for its legal services. *Id*. at ¶ 6.

71.     At all times material to this cause of action, THE FERRARO LAW FIRM, P.A. has competently and diligently represented TARS in connection with its life insurance escheatment *Qui Tam* whistleblower action over the past six (6) years and said action still remains pending.

72.     Upon information and belief, on or about 2014, Defendant SCRANTOM was retained by Defendant ELDER as a litigation funding consultant and/or broker.

73. Defendant SCRANTOM was subsequently retained as General Counsel for all of Defendant ELDERS' companies, including, but not limited to, G3 Analytics, LLC.

74. On or about December 9, 2015, and continuing through the filing of the present Complaint, Defendants SCRANTOM and ELDER have tortuously interfered with the ongoing attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS.

75. Upon information and belief, Defendant SCRANTOM was the architect of a scheme devised to collude with Defendant ELDER in a concerted effort to deprive THE FERRARO LAW FIRM, P.A. of its 40% contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

76. Specifically, Defendants SCRANTOM and ELDER have intentionally asserted false and patently misleading claims of ethical violations, professional negligence and breach of fiduciary claims against THE FERRARO LAW FIRM, P.A. Defendants SCRANTOM and ELDER's intentional and tortious conduct amounts to a deliberate attempt to have TARS terminate the legal representation agreement it has with THE FERRARO LAW FIRM, P.A. and to further deprive THE FERRARO LAW FIRM, P.A. of its contingent attorney's fee.

77. Moreover, Defendant SCRANTOM and ELDER have no legal standing to challenge THE FERRARO LAW FIRM, P.A.'s legal representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action.

78. Notwithstanding the foregoing, Defendants SCRANTOM and ELDER filed a frivolous demand for arbitration under the guise of the Tax Whistleblower Contract in the case styled, *Kenneth Platt Elder vs. The Ferraro Law Firm*, Case No. 01-15-0006-0909, pending before the (Ret.) Honorable Ronald C. Dresnick in the American Arbitration Association (hereinafter referred to as the "Florida arbitration matter").

79.     Despite not being licensed to practice law in the State of Florida nor authorized to engage in a limited appearance in the Florida arbitration matter, Defendant SCRANTOM filed the Florida arbitration matter as lead counsel for Defendant ELDER and continues to represent ELDER as co-lead counsel in the arbitration.

80.     Upon information and belief, Defendant SCRANTOM never filed a Motion to Appear *Pro Hac Vice* or a Verified Statement for Leave to Appear in the Florida arbitration matter as required by Rules 1-3.11 and 4-5.5 of the Rules Regulating the Florida Bar.  Upon further information and belief, Defendant SCRANTOM has also failed to notify The Florida Bar of his legal representation of a non-Florida resident in the Florida arbitration matter and has further failed to pay the applicable filing fee with The Florida Bar as required by Rule 1-3.11.

81.     The Florida arbitration matter alleges specious and unfounded claims of ethical violations, professional negligence and breach of fiduciary duty all designed to result in a termination of the attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS. The Florida arbitration matter is further designed to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action by improperly seeking a disgorgement and redemption of THE FERRARO LAW FIRM, P.A.'s attorney's fees.

82.     The crux of the Defendants' claims alleged in the Florida arbitration matter arise out of the unsubstantiated and patently false claim that Defendant ELDER, as opposed to TARS, is the sole and exclusive owner of the life insurance escheatment *Qui Tam* whistleblower action brought by TARS.

83.     Defendants SCRANTOM and ELDER's objective in the Florida arbitration matter is to take over the ownership of the life insurance escheatment *Qui Tam* whistleblower action so that they can terminate THE FERRARO LAW FIRM, P.A. to avoid paying THE FERRARO LAW FIRM, P.A. its contingent attorney's fees.

84.     The reason that Defendant ELDER, and his counsel, Defendant SCRANTOM, are interfering with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A. is because Defendant SCRANTOM setup a usurious and crippling litigation finance arrangement whereby ELDER and the Members of TARS borrowed Six Million Dollars ($6,000,000.00) at an interest rate of 100% per year (hereinafter referred to as the "usurious loan").

85.     The usurious loan was entered into on November 21, 2014, and now has a balance of approximately Twenty-One Million Dollars ($21,000,000.00).

86.     The effect of the usurious loan has been to create undue financial pressure on Defendant ELDER to the point that it has precipitated the tortious interference with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A. with the hope of avoiding and/or significantly lowering the firm's contingent attorney's fee.

87.     More specifically, Defendants SCRANTOM and ELDER realized that the litigation funding loan procured by SCRANTOM, as the consultant and/or broker on behalf of ELDER and TARS, as it stands now, would far exceed any potential net recovery that may be due to ELDER from the life insurance escheatment *Qui Tam* whistleblower action due to the exorbitantly high accrued interest on the loan.  They further concluded that the only way to obtain a higher percentage of any potential net recovery from the case was to target and attack THE FERRARO LAW FIRM, P.A.'s 40% contingent attorney fee set forth in its contract with TARS.

88.    Accordingly, Defendants SCRANTOM and ELDER devised a scheme that was designed to coerce THE FERRARO LAW FIRM, P.A. into withdrawing its legal representation of TARS and/or to significantly reduce its attorney contingent fee percentage from 40% to a much lower percentage.  The Defendants' anticipated end result would be that the net difference would then inure to the benefit of Defendants SCRANTOM and ELDER.

89.    Defendants SCRANTOM and ELDER intentionally designed the Florida arbitration matter to be the mechanism by which they would perpetrate their tortious interference scheme against THE FERRARO LAW FIRM, P.A. despite knowing that:  (1) ELDER is not a party to the Life Insurance *Qui Tam* Contract; (2) there is no arbitration clause in the Life Insurance *Qui Tam* Contract between THE FERRARO LAW FIRM, P.A. and TARS; and (3) there is no contractual nexus between the Life Insurance *Qui Tam* Contract and the tax whistleblower contract between THE FERRARO LAW FIRM, P.A. and ELDER.

90.    Stated otherwise, Defendants SCRANTOM and ELDER's tortious interference scheme amounts to a legal shakedown in an effort to deprive THE FERRARO LAW FIRM, P.A. of its 40% contingent attorney fee in the life insurance escheatment *Qui Tam* whistleblower action.

91.    TARS does not and has never had any interest in terminating its attorney-client relationship with THE FERRARO LAW FIRM, P.A.

92.    At no time did TARS solicit or request any advice from Defendants SCRANTOM and ELDER regarding its ongoing attorney-client relationship with THE FERRARO LAW FIRM, P.A.

93.    Even though Defendant ELDER has no enforceable right or standing to interfere with the attorney-client relationship between TARS and THE FERRARO LAW FIRM, P.A., he, along with Defendant SCRANTOM, because of the undue financial pressure they have created on

themselves by being a party to the usurious loan have chosen to tortuously interfere with the hope that they can shift THE FERRARO LAW FIRM, P.A.'s rightfully earned contingent attorney's fees to themselves.

94.     The tortious interference by Defendants SCRANTOM and ELDER has inhibited the ability of THE FERRARO LAW FIRM, P.A. to represent TARS in the life insurance escheatment *Qui Tam* whistleblower action and the firm's work in other matters, because THE FERRARO LAW FIRM, P.A. has had to dedicate a significant amount of time and resources to defend itself in the frivolous Florida arbitration matter brought by Defendants SCRANTOM and ELDER.

95.     THE FERRARO LAW FIRM, P.A. has a high likelihood of success in the Florida arbitration matter.  As a result, Defendants SCRANTOM and ELDER have threatened to pursue these same claims in a Florida state court and/or other forums in the likely event that THE FERRARO LAW FIRM, P.A. is the prevailing party in the arbitration.  *See* e-mail from Defendant SCRANTOM addressed to the Arbitrator dated February 13, 2017 (**Exhibit E**).

96.     Accordingly, Defendants SCRANTOM and ELDER's tortious conduct is ongoing and continuing in nature.

97.     As a result of the frivolous litigation that was commenced by Defendants SCRANTOM and ELDER against THE FERRARO LAW FIRM, P.A. has sustained monetary damages in that the firm has incurred legal expenses and costs in having to defend itself from these baseless claims.

98.     To date, THE FERRARO LAW FIRM, P.A. has expended more than seven hundred seventy-four (774) hours in attorney and paralegal time, amounting to more than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in legal services plus costs, as a direct and

proximate result of Defendants SCRANTOM and ELDER's tortious conduct.  Said damages are permanent and continuing in nature due to Defendants SCRANTOM and ELDER's ongoing tortious interference.

99.     All conditions precedent to the bringing of this action have been performed, have occurred or have been waived.

100.    As a result of the matters hereinafter described, Plaintiff, THE FERRARO LAW FIRM, P.A., was required to retain the undersigned to represent it in this matter and has bound and obligated itself to pay the firm a reasonable fee for its services, separate and apart from the damages THE FERRARO LAW FIRM, P.A., has already sustained in defending itself from the frivolous allegations stemming from the Florida arbitration matter.

## COUNT I

### CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT TIMOTHY D. SCRANTOM, ESQ.

101.    Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 100 above, and further alleges the following:

102.    At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

103.    Defendant SCRANTOM had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

104.     Defendant SCRANTOM intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

105.     As a direct and proximate result of Defendant SCRANTOM's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in legal services plus costs for its defense in the Florida arbitration matter, attorney's fees and costs in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, TIMOTHY D. SCRANTOM, ESQ., in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT II

## CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT SCRANTOM DULLES INTERNATIONAL, PLLC

106.     Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 100 above, and further alleges the following:

107.     At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client business relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

108.     Defendant SCRANTOM DULLES, at all times material, acting by and through its officers, directors, agents, servants, employees and/or independent contractors, including, but not limited to Defendant SCRANTOM, had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

109.     Defendant SCRANTOM DULLES, directly and/or acting through its officers, employees, agents, apparent agents and/or those over whom it exercised control including, but not limited to, Defendant SCRANTOM, intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

110.     As a direct and proximate result of Defendant SCRANTOM DULLES's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, in excess of FIVE HUNDRED THOUSAND DOLLARS

($500,000.00) in legal services plus costs for its defense in the Florida arbitration matter, attorney's fees and costs in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, SCRANTOM DULLES INTERNATIONAL, PLLC, a South Carolina professional limited liability company, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT III

## CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT TEN STATE INTERNATIONAL LAW, PLLC

111.    Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 100 above, and further alleges the following:

112.    At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client business relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

113.    Defendant TEN STATE INTERNATIONAL LAW, at all times material, acting by and through its officers, directors, agents, servants, employees and/or independent contractors,

including, but not limited to Defendant SCRANTOM, had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

114.    Defendant TEN STATE INTERNATIONAL LAW, directly and/or acting through its officers, employees, agents, apparent agents and/or those over whom it exercised control including, but not limited to, Defendant SCRANTOM, intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

115.    As a direct and proximate result of Defendant TEN STATE INTERNATIONAL LAW's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including without limitation, in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in legal services plus costs for its defense in the Florida arbitration matter, attorney's fees and costs in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, TEN STATE INTERNATIONAL LAW, PLLC, a South Carolina professional limited liability company, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest

and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT IV

### CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST DEFENDANT KENNETH PLATT ELDER

116.     Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 100 above, and further alleges the following:

117.     At all times material, THE FERRARO LAW FIRM, P.A. and TARS had and have an attorney-client relationship that is clearly evidenced by The Ferraro Law Firm Attorney's Contingency Fee Contract with TARS, along with THE FERRARO LAW FIRM, P.A.'s existing representation of TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action. *See* the Life Insurance *Qui Tam* Contract (**Exhibit D**).

118.     Defendant ELDER had knowledge of THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

119.     Defendant ELDER intentionally and unjustifiably interfered with THE FERRARO LAW FIRM, P.A. and TARS's attorney-client relationship in an intentional and deliberate attempt to terminate the legal representation agreement TARS has with THE FERRARO LAW FIRM, P.A. and to deprive THE FERRARO LAW FIRM, P.A. of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action.

120.     As a direct and proximate result of Defendant ELDER's tortious conduct described above, THE FERRARO LAW FIRM, P.A. has suffered and continues to suffer damages, including

without limitation, in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in legal services plus costs for its defense in the Florida arbitration matter, attorney's fees and costs in prosecuting the instant matter, as well as the prospective loss of its contingent fee for legal services rendered to TARS in connection with TARS's life insurance escheatment *Qui Tam* whistleblower action, and its ability to properly represent TARS in the life insurance escheatment *Qui Tam* whistleblower action.  The losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, KENNETH PLATT ELDER, in excess of Seventy-Five Thousand Dollars ($75,000.00) plus costs, interest and for such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## COUNT V

### REQUEST FOR DECLARATORY JUDGMENT THAT DEFENDANT ELDER HAS NO ENFORCEABLE RIGHTS AND/OR LACKS STANDING TO ASSERT ANY RIGHTS UNDER THE LIFE INSURANCE *QUI TAM* CONTRACT ENTERED INTO BETWEEN THE FERRARO LAW FIRM, P.A. AND TARS

121.    Plaintiff adopts, realleges and incorporates the allegations in paragraphs 1 through 100 above, and further alleges the following:

122.    On September 26, 2010, THE FERRARO LAW FIRM, P.A. entered in a lawful and binding contract of legal representation with TARS in connection with TARS's representation as a relator in its life insurance escheatment *Qui Tam* whistleblower action. *See* Life Insurance *Qui Tam* Contract (**Exhibit D**).

123.    The only parties to the Life Insurance *Qui Tam* Contract are THE FERRARO LAW FIRM, P.A. and TARS.  Further, the only signatories to the Life Insurance *Qui Tam* Contract were

Steven Lynam, in his capacity as President of TARS, and Jeffrey Sloman, Esq. and Russell

Koonin, Esq., in their capacity as attorneys and employees of THE FERRARO LAW FIRM, P.A.

*Id*. at Page 6.

124.    Defendant ELDER or his company, G3 Analytics, LLC, are not parties to or

signatories to the Life Insurance *Qui Tam* Contract.

125.    Accordingly, Defendant ELDER has no enforceable contractual rights and/or lacks

standing to assert any rights under the Life Insurance *Qui Tam* Contract, including, but not limited

to, the right to terminate, cancel, amend, rescind or otherwise modify any terms of the Life

Insurance *Qui Tam* Contract.  Moreover, Defendant ELDER has no enforceable contractual rights

and/or lacks standing to assert any purported claims for professional negligence or breach of

fiduciary duty arising out of THE FERRARO LAW FIRM, P.A.'s representation of TARS in the

life insurance escheatment *Qui Tam* whistleblower action.

126.    Nevertheless, Defendant ELDER filed the aforementioned Florida arbitration

matter alleging, among other things, that "all claims for misconduct or negligence or lawyer

malpractice relating to the [Life Insurance *Qui Tam* Contract] belong to [ELDER] who shall have

full rights to enforce and recover on account of such relationships."  Defendant ELDER further

seeks a rescission of the Life Insurance *Qui Tam* Contract, termination of the attorney-client

relationship between THE FERRARO LAW FIRM, P.A. and TARS, and disgorgement and

redemption of any and all claims by THE FERRARO LAW FIRM, P.A. to its attorney's contingent

fee compensation arising out its representation of TARS in the life insurance escheatment *Qui Tam*

whistleblower action.

127.    Based on the foregoing, there is a bona fide, actual, present and practical need for

a declaration that Defendant ELDER has no enforceable rights and/or lacks standing to assert any

rights under the Life Insurance *Qui Tam* Contract entered into between THE FERRARO LAW FIRM, P.A. and TARS.

128.   This request for declaration relates to the present controversy between THE FERRARO LAW FIRM, P.A. and Defendant ELDER in the pending Florida arbitration matter. Because there is a high likelihood that THE FERRARO LAW FIRM, P.A. will prevail in the Florida arbitration matter, as these claims have no contractual nexus to the Tax Whistleblower Contract, Defendant ELDER has threatened to bring a separate lawsuit against the Plaintiff asserting these same claims.  *See* e-mail from Defendant SCRANTOM addressed to the Arbitrator dated February 13, 2017 (**Exhibit E**).

129.   THE FERRARO LAW FIRM, P.A. is presently in doubt as to its rights and obligations and the parties have an actual, present, adversarial and antagonistic interest in determining THE FERRARO LAW FIRM, P.A.'s rights and obligations under the Life Insurance *Qui Tam* Contract, including, whether Defendant ELDER has any enforceable rights and/or standing to assert any rights against THE FERRARO LAW FIRM, P.A., under the Life Insurance *Qui Tam* Contract.

130.   THE FERRARO LAW FIRM, P.A. and Defendant ELDER's antagonistic and adverse interests are before the Court by proper process and the relief sought is not merely the giving of legal advice by the Court or to answer questions propounded from curiosity.

WHEREFORE, Plaintiff, THE FERRARO LAW FIRM, P.A., prays for judgment against Defendant, KENNETH PLATT ELDER, as follows:

A.   Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to assert any rights under the Life Insurance *Qui Tam* Contract against THE FERRARO LAW FIRM, P.A., including, but not limited to, the right to

terminate, cancel, amend, rescind or otherwise modify any terms of the Life Insurance *Qui Tam* Contract.

B. Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to assert any purported claims for professional negligence or breach of fiduciary duty against THE FERRARO LAW FIRM, P.A., arising out of the firm's representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action;

C. Declaration that Defendant, KENNETH PLATT ELDER, has no enforceable contractual rights and/or lacks standing to bring a claim for: (1) rescission of the Life Insurance *Qui Tam* Contract; (2) termination of the attorney-client relationship between THE FERRARO LAW FIRM, P.A. and TARS; or (3) disgorgement and redemption of any and all claims by THE FERRARO LAW FIRM, P.A. to its attorney's contingent fee compensation arising out its representation of TARS in the life insurance escheatment *Qui Tam* whistleblower action; and

D. That the Court grant such other and further relief both at law and in equity to which Plaintiff may show to be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, THE FERRARO LAW FIRM, P.A., demands a trial by jury of all issues triable as a matter of right by a jury.

DATED this 5th day of April, 2017.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 5th day of April, 2017, a true and correct copy of the

foregoing was electronically filed with the Clerk of Court by using the CM/ECF system, which

will send electronic notification to all counsel of record.

**THE FERRARO LAW FIRM, P.A.**
*Attorneys for Plaintiff*
Brickell World Plaza
600 Brickell Avenue
38th Floor
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222

By:_____
      **Janpaul Portal, Esq.**
      Florida Bar No.: 0567264
      jpp@ferrarolaw.com

*The Ferraro Law Firm, P.A. v. Timothy Scrantom, Esq., et al.*
Case No.: 1:17-cv-20640-UU

# Exhibit

# A

# THE FERRARO LAW FIRM, P.A.
## CONTRACT OF REPRESENTATION

I, Kenneth Elder, employ and retain The Ferraro Law Firm, P.A. (hereinafter "Attorney") to represent me as set forth herein.

## 1.   SCOPE OF REPRESENTATION

Attorney agrees to investigate, evaluate and pursue my possible tax whistleblower claim(s) for violations of the Internal Revenue laws, pursuant to 26 U.S.C.A. §7623, or other authority.

After the investigation of my claim(s), Attorney shall have the right to withdraw and cancel this Contract if it is unable or unwilling to undertake the contemplated representation. Thereafter, if Attorney agrees to pursue this claim after investigation and evaluation, I employ and retain attorney to represent my interests in the investigation, preparation and submission of materials required by the Internal Revenue Service ("IRS") or other administrative agency, and any and all other actions related to the claim(s) referenced above.

## 2.   AUTHORITY OF ATTORNEY

I empower Attorney to take all steps in this matter deemed by them to be advisable for the investigation, submission and handling of my claim(s), including hiring investigators, expert witnesses and/or other attorneys and filing any legal action necessary. In addition, Attorney is authorized and empowered to deposit checks made payable to the undersigned in order to disburse the settlement proceeds according to the terms of this representation.

## 3.   ATTORNEY'S FEES

It is understood and agreed that I am employing Attorney as set forth herein, and that if no recovery is made, I will not owe Attorney for any sums whatsoever as attorney's fees except as specifically provided herein.

I agree to pay Attorney an attorney's fee of 40% of the gross amount of any award, reward, or other compensation obtained in my case for its legal services performed in any manner related to the claim(s) referenced above.

The undersigned client understands and acknowledges that:

I have been informed and understand that Attorney does not and cannot represent me in connection with the negotiation and terms of this Contract. Rather, Attorney is acting on its own behalf, and I am entitled to review this Contract with separate counsel.

I fully understand my rights and the terms of The Ferraro Law Firm's contingency fee

Page 1 of 8

agreement and authorize my lawyers to present this acknowledgement to the appropriate court, for purposes of approval of the contingency fee agreement. Unless the court requires my attendance at a hearing for that purpose, my lawyers or law firms are authorized to provide this acknowledgement to the court for its consideration without my presence.

I have chosen and wish to engage the legal services of The Ferraro Law Firm in a Whistleblower claim(s) for underpayment of taxes action, the fee for which is contingent in whole or in part upon the successful prosecution or settlement thereof, and in consideration of the lawyers' or law firms' agreements to represent me and my desire to employ the lawyers or law firms listed below, I hereby knowingly, willingly, and voluntarily waive the percentage restrictions that are explained in Florida Bar Rule 4-1.5 and confirm the fee percentages set forth in this contingency fee agreement.

I have selected the Attorney as my counsel of choice in this matter and would not be able to engage its services without this acknowledgment; and I expressly state that this acknowledgement and contingency fee agreement is made freely and voluntarily, with full knowledge of its terms, and that all questions have been answered to my satisfaction.

I am not under the influence of any substance, drug, or condition (physical, mental, or emotional) that interferes with my understanding of this entire agreement in which I am entering and all the consequences thereof.

I have entered into and signed this Contract of Representation freely and voluntarily.

If the provisions of this Contract regarding payment of attorney's fees are in conflict with any court order or settlement agreement, such court order or settlement agreement shall govern the recovery of attorney's fees under this Contract, but in no event shall attorney's fees exceed the agreed-upon 40%.

I understand that attorney's fees will be calculated based on the gross amount of settlement, judgment or recovery, and the expenses that have been advanced will be deducted from the net proceeds payable to the client after deduction of the attorney's fee.

In the event attorneys' fees are awarded by a court or governmental agency as part of an award, reward, or other compensation the Attorney will be compensated based upon the above-described percentage fee.   Due to the contingent nature of the fees involved in this representation, the risk of non-recovery, and the difficulty of the issues involved, it is understood and agreed that the application of a contingent fee multiplier to any awarded attorneys' fees is a material term of this contract, and that without the availability of a contingency fee multiplier, Attorney would not agree to undertake this representation.

4.    ASSOCIATE COUNSEL

I specifically authorize Attorney to associate additional co-counsel if Attorney believes it advisable or necessary for the proper handling of my claim, and expressly authorize Attorney to divide any attorney's fee that may eventually be earned with co-counsel so associated for the

TFLF-01905

handling of my claim. If co-counsel is associated, I will be notified in writing of the co-counsel's identity and fee share and, upon request, I will provide my written consent to Attorney's choice of co-counsel and specific fee division with co-counsel. I understand that the amount of attorney's fees that I pay will not be increased by the work of co-counsel associated to assist with the handling of my claim, and that such associated co-counsel will be paid by Attorney out of the attorney's fee I pay to Attorney.

5.   EXPENSES

Except as provided herein, I understand that during the term of representation my Attorney will advance all expenses incurred by Attorney on my behalf related to my claim(s), including, but not limited to, filing fees, service of process fees, court reporter expenses, investigation expenses, photographs and photo-reproduction expenses, and reasonable travel expenses, but that those expenses will be deducted from my net recovery of any award, reward, or other compensation after all attorney's fees are deducted. For example, if Client is awarded $1,000.00, and the expenses total $100.00, the attorney's contingency fee shall be based on the gross amount of $1,000.00. Client's share of the recovery shall be the balance the remaining, after deducting attorney's contingency fees then costs.

In the event no recovery is made, I understand that I will owe Attorney no fee and have no obligation to reimburse my Attorney for expenses incurred in my case except as specifically set forth in para. 8 below.

As a special incentive to Client for the extra costs borne by him, the first cumulative $30,000 of any award, reward, or other compensation received by Client will not be subject to the Attorney's Fee in section 3. above.

6.   DISBURSEMENT OF PROCEEDS TO CLIENT

If the IRS or other governmental agency pays an award, reward, or other compensation in this matter pursuant to section 7623, or other authority, and sends the award check or otherwise transfers award funds directly to me or my agent, appointee, or beneficiary, I agree to endorse such check and send it to Attorney via overnight air courier within five business days of receipt of same, or if the award funds are electronically transferred to me I will wire transfer the full amount to Attorney. Attorney will then deposit such check or wire transfer in trust, deduct applicable fees and expenses, and disburse the proceeds recovered on my behalf under the terms of this Contract. At the time of disbursement of any proceeds, I will be provided with a detailed disbursement sheet reflecting the method of calculation for attorney's fees and expenses which are due to my Attorney from the award, reward, or other compensation proceeds. Any failure to remit an award check or wire transfer to Attorney within five days will result in an interest charge accruing daily due to Attorney in the amount of twenty percent per year, plus all attorney's fees and expenses incurred in any collection action relating to the attorney's fees and expenses with respect to such award, reward, or other compensation.

Except as may be required by law, Attorney will not agree to protect any claim of a subrogation carrier or other creditor without my consent.

TFLF-01906

7.    NO GUARANTEE OF RECOVERY

I understand that no guarantee or assurances of any kind have been made regarding the likelihood of success of my claim, but that my Attorney will use its skill and diligence, as well as its experience in the field, to diligently pursue my claim(s). Further, if an appeal is taken of any award, reward, or other compensation obtained, a new and separate agreement for fees and services shall be entered into by the parties.

8.    TERMINATION OF REPRESENTATION

I understand I can terminate Attorney's representation of me at any time by providing written notice to Attorney at the address of its principal offices. Should I elect to terminate Attorney's representation prior to the full conclusion of its services under this Contract, I understand and agree that Attorney has a claim for unpaid attorney's fees that will become due upon receipt by me or by any successor attorney of any award, reward, or other compensation for any remaining portion of my claim(s). I understand that the obligation for unpaid attorney's fees will be calculated based on the percentage of work-in-progress completed on the claim(s) at the time Attorney is released. If I terminate the Attorney's representation of me after Attorney has made a tax whistleblower submission to the IRS or other agency, I understand and agree that Attorney will be entitled to the full attorney's fee as described in para. 3. Further, I understand that Attorneys may withdraw from their representation of me upon due and proper notice if Attorney determines that the prosecution of my claim(s) is not feasible, worthwhile, or meritorious, or for any other reason permitted by a court or the applicable rules of professional conduct.

Should any irresolvable dispute regarding any matter relating to this Contract arise between the parties hereto, the parties agree to submit the dispute to binding arbitration pursuant to mutually agreed-upon procedures before a mutually agreed-upon arbitrator, or, if the parties are unable to agree upon an arbitrator and procedures, then pursuant to the then applicable rules and procedures for commercial disputes of the American Arbitration Association ("AAA") and by arbitrator(s) selected by and through AAA. The parties further agree that all reasonable costs of arbitration, including the prevailing party's attorneys' fees, shall be borne by the unsuccessful party to the arbitration. The parties also agree that the location of the arbitration shall be Miami, Florida. Judgment upon an award rendered through arbitration in any such proceeding may be entered and enforced in any court of competent jurisdiction.

9.    DISPOSITION OF FILE

The file and any materials compiled by attorney during the course of my representation will remain the property of Attorney upon the conclusion of the representation. I understand that, after my case is concluded, Attorney may dispose of the file in accordance with its document retention policy. Should I wish to obtain any information or material from Attorney's file, including personal items furnished by me to Attorney to assist in the handling of my case, such information and materials will be returned to me upon my request, if the request is made within sixty (60) days after the conclusion of the representation.

TFLF-01907

10.   CONFIDENTIALITY

Attorney acknowledges that confidentiality regarding all aspects of this claim and Attorney's representation related thereto is essential to client. Attorney agrees not to disclose client's identity or other information provided from client unless it is necessary for the prosecution of the claim(s).

11.   SEVERABILITY

The illegality, invalidity or unenforceability of any provision of this Contract shall not affect the legality, validity or enforceability of any other provision hereof, and this Contract shall be construed in all respects as if such illegal, invalid or unenforceable provision, if any, were never included in this Contract.

12.   MODIFICATIONS

This Contract may not be modified, changed, altered, or amended in any way except in a writing signed by all parties. The parties expressly agree that no oral modification of this Contract shall be effective, notwithstanding any provisions of the governing law that may allow for oral modification.

13.   ENTIRE AGREEMENT

The entire agreement between Attorney and me relating to the subject matter of this Contract is contained herein. No promises, inducements, or considerations have been offered, accepted, or given except as herein set forth. This Contract supersedes any prior oral or written agreement concerning the subject matter of this Contract.

14.   GOVERNING LAW

All terms and conditions of this Contract shall be governed, construed and interpreted by, through and under the laws of the State of Florida.

15.   STATEMENT OF CLIENT'S RIGHTS

The undersigned Client has, before signing this contract, received and read the Statement of Client's Rights and understands each of the rights set forth therein. The undersigned Client has signed the statement and received a signed copy to refer to while being represented by the undersigned Attorney.

TFLF-01908

I HAVE READ AND UNDERSTAND THIS CONTRACT AND AGREE AS STATED ABOVE THIS _29_ DAY OF _July_____, 2008.

_____
CLIENT SIGNATURE

_Ken Elder_____
NAME (please print)

_____
STREET ADDRESS                    CITY        STATE        ZIP CODE

_____
SOCIAL SECURITY NUMBER

_Kelder@granitefinancialonline.com_
EMAIL ADDRESS

By:_____ on behalf of The Ferraro Law Firm, P.A.

Page 6 of 8

TFLF-01909

## STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.

2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.

5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right

TFLF-01910

to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561- 5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.

_____          _____7/28/08_____
Client Signature                          Date

_____          _____7/28/08_____
The Ferraro Law Firm, P.A.                Date

TFLF-01911

*The Ferraro Law Firm, P.A. v. Timothy Scrantom, Esq., et al.*
Case No.: 1:17-cv-20640-UU

# Exhibit

# B

# Consulting Agreement

This Consulting Agreement (the "Agreement") is entered into this 20th of August, 2010, by and between G3 Analytics LLC, a Michigan Limited Liability Company, ("Consultant") and Total Asset Recovery Services LLC, a Michigan Limited Liability Company (the "Company").

**RECITALS**

WHEREAS, the Company is in need of assistance in obtaining information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits; and

WHEREAS, Consultant has agreed to perform consulting work for the Company in providing information about unremitted insurance proceeds for purposes of various Qui Tam lawsuits, support, and other related activities as directed by the Company;

NOW, THEREFORE, the parties hereby agree as follows:

**1. Consultant's Services.** Consultant shall be available and shall provide to the Company professional consulting services in the area of unremitted insurance proceeds for purposes of various Qui Tam lawsuits ("Consulting services") as requested.

**2. Consideration.**

**A. RATE.** In consideration for the Consulting Services to be performed by Consultant under this Agreement, the Company will pay Consultant a contingent fee at the rate of seventy-five (75) percent of the "Net Proceeds" from any insurance-oriented Qui Tam lawsuit filed by or on behalf of the Company. "Net Proceeds" shall be the amount paid to the Company after litigation expenses and attorney's fees are deducted. Consultant's contingent fee will not be considered an expense for purposes of calculating "Net Proceeds," nor shall expenses, other than litigation expenses of the Company, be considered an expense for purposes of calculating "Net Proceeds."

**B. EXPENSES.** All expenses incurred by Consultant under this agreement are the sole responsibility of Consultant and will not be reimbursed by the Company unless explicitly agreed to in writing, in advance.

1

**3. Independent Contractor.**  Nothing herein shall be construed to create an employer-employee relationship between the Company and Consultant or any of Consultant's employees, contractors, or owners. Consultant is an independent contractor and not an employee of the Company or any of its subsidiaries or affiliates. The consideration set forth in Section 2 shall be the sole consideration due Consultant for the services rendered hereunder. It is understood that the Company will not withhold any amounts for payment of taxes from the compensation of Consultant hereunder. Consultant will not represent to be or hold itself out as an employee of the Company.

**4. Confidentiality/Exclusivity.**  In the course of performing Consulting Services, the parties recognize that Consultant and the Company may come in contact with or become familiar with information which the Company or its subsidiaries or affiliates or Consultant may consider confidential. This information may include, but is not limited to, information pertaining to the Company or Consultant, which information may be of value to a competitor. Consultant and the Company agree to keep all such information confidential and not to discuss or divulge it to anyone other than appropriate Company or Consultant personnel or their designees. Additionally, Consultant agrees not to utilize any information obtained for the Company for itself or any other party as it relates to Qui Tam lawsuits.

**5. Term.** This Agreement shall commence on the date of ratification and shall not terminate unless terminated by both parties in writing.

**6. Notice.**  Any notice or communication permitted or required by this Agreement shall be deemed effective when personally delivered or deposited, postage prepaid, in the first class mail of the United States properly addressed to the appropriate party at the address set forth below:

1. Notices to Consultant:

G3 Analytics Care of Attorney John Isgrigg

6515 Highland Rd, Suite 100

Waterford, MI 48327


2. Notices to the Company:

2

Steven J. Lynam
4529 Tamworth Road
Sylvania, OH 43560

**7. Miscellaneous.**

*7.1 Entire Agreement and Amendments.* This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral. No amendment or extension of the Agreement shall be binding unless in writing and signed by both parties.

*7.2 Binding Effect, Assignment.* This Agreement shall be binding upon and shall inure to the benefit of Consultant and the Company and to the Company's successors and assigns. Nothing in this Agreement shall be construed to permit the assignment by Consultant of any of its rights or obligations hereunder, and such assignment is expressly prohibited without the prior written consent of the Company.

*7.3 Governing Law, Severability.* This Agreement shall be governed by the laws of the State of [specify]. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

WHEREFORE, the parties have executed this Agreement as of the date first written above.

Total Asset Recovery Services LLC

By:

_____
Steven J. Lynam
President/Member

G3 Analytics LLC

By:

_____
Kenneth Elder
President/Member

3

*The Ferraro Law Firm, P.A. v. Timothy Scrantom, Esq., et al.*
Case No.: 1:17-cv-20640-UU

# Exhibit

# C

| | |
|---|---|
| **From:** | JIsgrigg@aol.com |
| **To:** | Ken Elder |
| **Cc:** | jisgrigg@aol.com |
| **Subject:** | Claim Model (G3 Consult) |
| **Date:** | Wednesday, November 18, 2015 1:09:34 PM |
| **Attachments:** | G3Consult2.docx |

Notes from 2010. Ken's comments are in CAPS.

John

From: kelder@granitefinancialonline.com
To: JIsgrigg@aol.com
Sent: 8/29/2011 2:53:58 P.M. Eastern Daylight Time
Subj: FW: FW: FW: Claim Model (G3 Consult)

Final version I believe

Ken Elder

Granite Financial

PO Box 215077

Auburn Hills, MI 48321-5077

248-808-1195

www.granitefinancialonline.com

**From:** Greg Lyman [mailto:gsl@totalassetrecoveryservices.com]
**Sent:** Thursday, August 19, 2010 9:25 AM
**To:** Ken Elder
**Subject:** Re: FW: FW: Claim Model (G3 Consult)

Made changes to the two sections to reflect your comments. Need final company name and notice address.

Greg

On Tue, Aug 17, 2010 at 11:32 AM, Ken Elder <kelder@granitefinancialonline.com> wrote:

Greg,

A few minor changes.....see my responses to my attorneys notes below

Ken Elder
Granite Financial
PO Box 215077
Auburn Hills, MI 48321-5077
P 248-852-8645
F 888-623-3686
kelder@granitefinancialonline.com
www.granitefinancialonline.com

---

**From:** Ken Elder [mailto:kelder@granitefinancialonline.com]
**Sent:** Monday, August 16, 2010 5:22 PM
**To:** 'JIsgrigg@aol.com'
**Subject:** RE: FW: Claim Model (G3 Consult)

ANSWERS IN CAPS BELOW

Ken Elder
Granite Financial
PO Box 215077
Auburn Hills, MI 48321-5077
P 248-852-8645
F 888-623-3686
kelder@granitefinancialonline.com
www.granitefinancialonline.com

---

**From:** JIsgrigg@aol.com [mailto:JIsgrigg@aol.com]
**Sent:** Monday, August 16, 2010 5:13 PM
**To:** kelder@granitefinancialonline.com
**Cc:** jisgrigg@aol.com
**Subject:** Re: FW: Claim Model (G3 Consult)

I have reviewed the document G3Consult you sent 8/12/2010.

Paragraph 1 is vague regarding the amount of time/effort/expense you are agreeing to incur "as requested."

I'M OK WITH THIS, IF I'M PUTTING IN A CONSIDERABLE AMOUNT OF TIME IT'S PROBABLY GOING WELL

Does paragraph 4 need to protect your confidential information as well?

YES, I'LL REQUEST MUTUAL

How does the fee in paragraph 2 work? How is the atty fee and expenses of the Company determined as this comes off the top before you get your 75%? Who gets the other 25%, the Company?

I THINK HE MEANT THE FERRARO LAW FIRM'S ATTORNEY EXPENSES AND ATTORNEY FEES. I WILL INSIST THAT IT IS THIS WAY. TOTAL ASSET RECOVERY SERVICES WILL NOT BE ABLE TO ADD ANY EXPENSES WHATSOEVER.

EXAMPLE:

$100 MILLION SETTLEMENT AND RELATOR RECEIVES 33%. THE FERRARO LAW FIRM GETS 40% OR $13.2 MILLION AND TOTAL ASSET RECOVERY SERVICES GETS $19.8 MILLION, OF THE $19.8 MILLION I GET $14.85 MILLION.

John

248-886-8622

~~~~~~~~~~~~~~~~~~~~

In a message dated 8/12/2010 2:15:31 P.M. Eastern Daylight Time, kelder@granitefinancialonline.com writes:

For your review

Ken Elder
Granite Financial
PO Box 215077
Auburn Hills, MI 48321-5077
P 248-852-8645
F 888-623-3686
kelder@granitefinancialonline.com
www.granitefinancialonline.com

**From:** Greg Lyman [mailto:gsl@totalassetrecoveryservices.com]
**Sent:** Thursday, August 12, 2010 2:07 PM
**To:** Ken Elder
**Subject:** Re: Claim Model

Ken,


Please see attached consulting agreement.  Let me know your thoughts.  Made it pretty simple.


Greg

On Thu, Aug 12, 2010 at 11:25 AM, Ken Elder <kelder@granitefinancialonline.com> wrote:

This is mind boggling. $250,000 policies + treble damages, +12%, + no statute of limitations - a plaintiff's attorney's dream

Ken Elder
Granite Financial
PO Box 215077
Auburn Hills, MI 48321-5077
P 248-852-8645
F 888-623-3686
kelder@granitefinancialonline.com
www.granitefinancialonline.com

TFLF-02431

*The Ferraro Law Firm, P.A. v. Timothy Scrantom, Esq., et al.*
Case No.: 1:17-cv-20640-UU

# Exhibit
# D

**THE FERRARO LAW FIRM**
**ATTORNEY'S CONTINGENCY FEE CONTRACT**

THIS IS AN AGREEMENT between Total Asset Recovery Services, LLC, hereafter referred to as "Client," and THE FERRARO LAW FIRM, hereafter referred to as "Attorney."

1. Scope of Representation:  Client retains Attorney to represent Client only in connection with the pursuit of a *Qui Tam* Whistleblower action under the False Claim Acts of certain states, ███████████████████████████ for allegations arising from a failure of life insurance companies to escheat unclaimed funds from life insurance policies to the respective states in violation of law.

   After the investigation of my claim(s), Attorney shall have the right to withdraw and cancel this Contract if it is unable or unwilling to undertake the contemplated representation.  Thereafter, if Attorney agrees to pursue this claim after investigation and evaluation, I employ and retain Attorney to represent my interests in any and all actions, claims or trial proceedings related to the claim(s) referenced above.

2. Services to be Performed by Attorney:  Attorney agrees to investigate the potential claim, and, in its discretion, at the conclusion of the investigation, to file a civil action *qui tam* complaint for false claims in one or more states.  Attorney reserves the right not to file a complaint after it completes its evaluation of the merits of the potential *qui tam* action. Attorney agrees that if it files a complaint, it will comply with the relevant False Claim Act of the applicable state(s) for purposes of noticing the Attorney General and/or the Comptroller to put the state(s) on notice as to the complaint.  In the event the applicable state agency agrees to proceed with the action, Attorney agrees to continue to pursue the claim.  In the event that the state agency does not agree to pursue the claim, Attorney reserves the right to withdraw its representation of Client and not proceed further with the matter.  Client is thus hereby advised that should the applicable state(s) decide not to proceed with the action, Attorney is entitled, in its complete and sole discretion, to not proceed with the action.

   The services covered by this Agreement will terminate when all matters are concluded in the trial court.  Services on appeal or other proceedings to enforce the judgment are not covered by this Agreement; if those services are necessary, Client may retain Attorney at a later date for an additional 5% of the judgment or settlement amount, or if it is an appeal from a final judgment in favor of Defendant for the normal hourly rate of Attorney which is currently $500.00 per hour, or in such other amount as the parties may agree in writing.

TFLF-01812

3.    <u>Co-Counsel:</u>  Attorney is authorized to associate and employ other counsel to assist in representing Client, at no additional expense to Client.  This may also include the retention of local counsel outside of the Ferraro Law Firm for purposes of appearing in court *pro hac vice*.  I understand that the amount of attorney's fees that I pay will not be increased by the work of co-counsel associated to assist with the handling of my claim, and that such associated co-counsel will be paid by Attorney out of the attorney's fee I pay to Attorney.

4.    <u>No Guarantee as to Result:</u>  Client acknowledges that Attorney has made no guarantee as to the outcome or amounts recoverable in connection with Client's claim.

5.    <u>Litigation Costs and Expenses:</u>  Attorney shall advance such costs, including case specific and general costs, as in their judgment are necessary for the prosecution of these claims and costs advanced by Attorney shall be payable out of any recovery in the case.  These costs may include, but will not be limited to, case specific costs of obtaining medical records and death certificates, copying costs, postage, telephone and facsimile transmission charges, messenger and delivery charges, travel expenses, court costs and filing fees, process serving fees, investigators' fees, word and data processing charges, fees to experts for consultation with Attorney, and/or appearance at deposition or trial, and jury fees. In the event no recovery is made, I understand that I will owe Attorney no fee and have no obligation to reimburse Attorney for expenses incurred in the litigation of my case.

6.    <u>Contingency Fee to Attorney:</u>  Client acknowledges that he has been advised by Attorney that any contingency fee is negotiable and is not set by law.  Bearing such advice in mind, Client agrees to pay to Attorney a contingency fee as follows:

"Settlement, "Judgment" and "Recovery" shall be defined as the total amount of distribution the court(s) award Client as plaintiff in the *qui tam* action(s).

It is understood and agreed that I am employing Attorney as set forth herein, and that if no recovery is made, I will not owe Attorney for any sums whatsoever as attorney's fees except as specifically provided herein.

I agree to pay Attorney an attorney's fee of **forty-percent (40%)** of the gross amount of any settlement, judgment, or recovery obtained in my case for their legal services performed in all proceedings related to the claim(s) referenced above.

TFLF-01813

The undersigned client understands and acknowledges that:

I have been advised that by signing this acknowledgment, I agree to pay Attorney a contingency fee that is in excess of the standard fees permitted by the Florida Bar;

I fully understand my rights and the terms of the Ferraro Law Firm's contingency fee agreement and authorize Attorney to present this acknowledgment to the appropriate court, for purposes of approval of the contingency fee agreement.  Unless the court requires my attendance at a hearing for that purpose, Attorney is authorized to provide this acknowledgment to the court for its consideration without my presence.

I have chosen and wish to engage the legal services of The Ferraro Law Firm in a *qui tam* Whistleblower claim(s) for failure of life insurance companies to escheat to the state(s) unclaimed life insurance policies, the fee for which is contingent in whole or in part upon the successful prosecution or settlement thereof, and in consideration of Attorney's agreement to represent me and my desire to employ the Ferraro Law Firm, I hereby knowingly, willingly, and voluntarily waive the percentage restrictions that are explained in Florida Bar Rule 4-1.5 and confirm the fee percentages set forth in the contingency fee agreement;

I have selected the Ferraro Law Firm as my counsel of choice in this matter and would not be able to engage their services without this acknowledgment; and I expressly state that this acknowledgement and contingency fee agreement is made freely and voluntarily, with full knowledge of its terms, and that all questions have been answered to my satisfaction.

I am not under the influence of any substance, drug, or condition (physical, mental, or emotional) that interferes with my understanding of this entire waiver in which I am entering and all the consequences thereof.

I have entered into and signed this Contract of Representation freely and voluntarily.

If the provisions of this Contract regarding payment of attorney's fees are in conflict with any court order or settlement agreement, such court order or settlement agreement shall govern the recovery of attorney's fees under this Contract, but in no event shall attorney's fees exceed the agreed-upon 40%.

I understand that attorney's fees will be calculated based on the gross amount of settlement, judgment or recovery, and the expenses that have been advanced will be deducted from the net proceeds payable to the client after deduction of the attorney's fee.

In the event attorneys' fees are awarded by the Court or governmental agency as part of the Judgment, settlement or award entered against Defendant and/or any insurance company on any suit, filing or submission initiated on my behalf by my attorneys, the attorneys will be compensated based upon the above-described percentage fee, or the

TFLF-01814

amount of fees awarded by the Court or governmental agency whether awarded against the Defendant, an insurance company or any other entity, whichever is greater. In the event of an award by the Court or governmental agency, I agree and acknowledge that a fee computed at a rate of $500.00 per hour is fair and reasonable. Due to the contingent nature of the fees involved in this representation, the risk of non-recovery, and the difficulty of the issues involved, it is understood and agreed that the application of a contingent fee multiplier to any awarded attorney's fees is a material term of this contract, and that without the availability of a contingency fee multiplier, attorney would not agree to undertake this representation.

I also understand that if an appeal is taken of any judgment, settlement or award obtained, a new and separate agreement for fees and services shall be entered into by the parties. I also understand that an additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.

7.   <u>Disbursement of Proceeds to Client:</u>   At the time of disbursement of any proceeds recovered on my behalf under the terms of this Contract, I will be provided with a detailed disbursement sheet reflecting the method of calculation for attorney's fees and litigation expenses which are due to Attorney from the judgment or settlement proceeds.

Except as may be required by law, Attorney will not agree to protect any claim of a subrogation carrier or other creditor without my consent.

8.   <u>Costs and Expenses as Affecting Contingency Fees:</u>   Costs and expenses incurred in connection with the prosecution or settlement of Client's claim shall be reimbursed after the contingency fee is computed. For example, if the court distributes $1,000.00 to Client, and litigation expenses total $100.00, the Attorney's contingency fee shall be based on the gross amount of $1,000.00. Client's share of the recovery shall be the balance remaining after deducting Attorney's contingency fees then costs.

9.   <u>Form of Recovery as Affecting Contingency Fee:</u>   In the event the recovery consists of periodic payments over a period of time, or any other form of property which is not cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery and shall be payable out of the first funds or property received.

10.   <u>Cooperation with Attorney:</u>   Client shall keep Attorney advised of the whereabouts of Client at all times, shall appear on reasonable notice to any and all depositions and court appearances and shall comply with all reasonable requests of Attorney in connection with the preparation and presentation of the claims described herein.

Further, I will not discuss this case with another attorney or person without previously informing Attorney and/or associated counsel of my intentions. I understand that discussing this case with people on a casual basis may result in a waiver of the attorney-client and/or work product privileges, and that this could not only harm my case, but could also harm the case of others.

TFLF-01815

11.    Settlement Discussion:  No settlement of said claims shall be made by Client except by and through the Attorney.  Client agrees not to make any settlement or engage in any negotiations of any kind unless Attorney is present and consents.

12.    Attorney's Lien:  Client hereby grants Attorney a lien on Client's claim and any cause of action filed thereon to secure payment to Attorney of all sums due under this Agreement for services rendered and costs advanced.

13.    Other Services:  The fees as stated above in this agreement constitute the total fees which Client shall be required to pay to Attorney as a result of Attorney's prosecution of claims for the *qui tam* action specified in this Agreement.  Any other services requested by Client and rendered by Attorney to Client shall be billed to, and paid by, Client at the normal hourly rate of Attorney which is currently $500.00 per hour, or in such other amount as the parties may agree in writing.

14.    No Fee if No Recovery:  Client and Attorney agree that if no recovery, monetary or otherwise, is obtained, Attorney shall receive no fee for their services.  Client understands that no guarantee or assurances of any kind have been made regarding the likelihood of success of the claim.

15.    Confidentiality:  Attorney acknowledges that confidentiality regarding all aspects of this claim and Attorney's representation related thereto is essential to Client.  Attorney agrees not to disclose Client's identity or other information provided from Client unless it is necessary for the prosecution of the claim.

16.    Severability:  The illegality, invalidity or unenforceability of any provision of this Contract shall not affect the legality, validity or enforceability of any other provision hereof, and this Contract shall be construed in all respects as if such illegal, invalid or unenforceable provision, if any, were never included in this Contract.

17.    Client Acknowledgment:  Client acknowledges having read all of the terms and conditions set forth in this Agreement and that he fully understands and agrees to same.

18.    Governing Law:  It is understood that the terms and conditions of this agreement are governed primarily by Florida Law and the Florida Rules of Professional Conduct.

TFLF-01816

19.   Statement of Client's Rights:   The undersigned Client has, before signing this contract, received and read the Statement of Client's Rights and understands each of the rights set forth therein.  The undersigned Client has signed the statement and received a signed copy to refer to while being represented by the undersigned Attorney.

**I HAVE READ AND UNDERSTAND THIS CONTRACT AND AGREE AS STATED ABOVE THIS ___26___ DAY OF SEPTEMBER, 2010.**

THE FERRARO LAW FIRM

By: _____
Jeffrey H. Sloman, Esq.

_____
Russell Koonin, Esq.

TOTAL ASSET RECOVERY SERVICES, LLC

By: _____
Steven J. Lynam
President, Total Asset Recovery Services, LLC

TFLF-0181

## STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.

2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.

5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right

TFLF-01818

to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561- 5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.

_____          _____
Client Signature                            9/26/2010
                                                  Date

_____          _____
The Ferraro Law Firm, P.A.                9/28/10
                                                  Date

Page 8 of 8

TFLF-0181

*The Ferraro Law Firm, P.A. v. Timothy Scrantom, Esq., et al.*
Case No.: 1:17-cv-20640-UU

# Exhibit

# E

## Janpaul P. Portal

| | |
|---|---|
| **From:** | Timothy D. Scrantom <scrantom@sdils.com> |
| **Sent:** | Monday, February 13, 2017 3:31 PM |
| **To:** | rdresnick@klugerkaplan.com; MargieVigil@adr.org |
| **Cc:** | ggonzalez@klugerkaplan.com; Janpaul P. Portal; Scott A. Knott; kelder@g3analytics.com; gloria.mcknight@hklaw.com; joe.varner@hklaw.com; James L. Ferraro |
| **Subject:** | Kenneth P. Elder v. The Ferraro Law Firm PA Case No. 01-15-0006-0909 |

Dear Judge Dresnick:

We refer to the Order of the tribunal in the referenced matter, dated January 23, 2017, that *inter alia* required the parties to submit by today a proposed date to convene the postponed evidentiary hearing on jurisdiction.

The parties and counsel met in Miami last Monday. All interested parties were in attendance, including all members of TARS. We were unable to reach a settlement of any of Mr. Elder's claims.

We discussed with the representatives of the Respondent our intention to discontinue the arbitration proceedings because, among other reasons, all of the interested parties are not participating in them; the arbitration would become even more protracted were we to attempt to force those interested non-parties to participate; the other interested non-parties (including the Respondent's individual lawyers) will not voluntarily agree to join in the arbitration proceedings; and the arbitrator has signaled he may not be in a position to grant the relief we seek—the return of Mr. Elder's claim to him—under the current construction of the arbitration against only the Ferraro Law Firm. This is an unfortunate state of affairs, but we appear to be at an impasse.

Accordingly, we intend to wind down the arbitration in a manner consistent with the Commercial Rules. We believe this can be done without prejudice to Mr. Elder's rights against any party or non-party to these proceedings since the Tribunal has challenged its own jurisdiction to hear the matter as filed and since the Respondent has urged dismissal for lack of any jurisdictional grounds to proceed. We also believe that the Tribunal would not be in a position to award costs to either party for similar reasons: the Respondent has categorically denied that the contract containing the arbitration clause relates in any way to the claims made by the Claimant and therefore there is no rational basis to invoke the fee-shifting clause in the same contract. We are not aware of any other basis in law for fees or costs to be assessed against either party since, under the Respondent's construction of its own engagement agreement with Mr. Elder, it has no contract with him as to Q1.

As the Respondent has invited by its submissions in the arbitration, we intend to pursue Mr. Elder's claims in a forum or fora other than arbitration. If the Tribunal sees fit to comment on the foregoing, or has any other suggestions as to how the parties might try to amicably resolve their disputes, we would welcome the input before taking further measures.

Respectfully yours,

Timothy D. Scrantom

## SCRANTOM DULLES
**Timothy D. Scrantom**
Lawyer and Barrister

T. +1.202.810.1702

scrantom@sdils.com
www.sdils.com

The information contained in this communication is confidential and is intended only for the use of the addressee. It is the property of SDILS. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.